## GLOVER v. GASQUE.

1. Deeds—Jury.—Exceptions that Court did not construe deeds, but left their construction to the jury, are not well taken.
2. Ibid.—Wills—Jury.—If it is in dispute, it is proper for Judge to leave to the jury the question whether there was a will or deed which conveyed the property in question.
3. Ibid.—Circuit Judge—Jury—Real Property.—It is duty of Court to construe a deed, interpret its language, and state its effect, when it is susceptible of only one inference, but where more than one inference can be drawn therefrom, and especially where such inferences are dependent on other facts, the effect of the deed is for the jury. Rule as to location of described boundaries stated.
4. New Trial refused on question of fact will not be disturbed.
5. Ibid.—Harmless Error.—If Judge misunderstand the facts, it is not ground for reversing refusal of new trial, if reasons for refusing the motion be otherwise correct.

Before Klugh, J., Colleton, March, 1902. Affirmed.

Action for partition by Eleanor L. Glover against Mabel Yonge Gasque *et al.* From judgment for defendants other than heirs of Mary E. Grace, the plaintiff and the heirs of Mary E. Grace appeal, the plaintiff on the following exceptions:

"1. Because, while the title to the land in dispute depended entirely on written documents, he left it to the jury to construe such written documents, to wit: a. He should have charged that the will in evidence and not disputed was Dr. Joseph Glover's will, probated in 1840, and construed it, stating its terms and their meaning, and not left it to the jury

to say whether there was such a will or not, nor what the terms thereof were.  b.  He should have charged that the deed from Francis Y. Glover, Jr., to Mary E. Grace, dated the      day of      18      in evidence and not disputed, was the deed from Francis Y. Glover, Jr., to Mary E. Grace, and conveyed to her the property purported to be conveyed from him to her in such deed, and not left it to the jury to say whether there was such a deed or not.   Whether the deed was properly executed or not, was a question of law for the Judge to decide and not a question for the jury, and his Honor erred in leaving the question whether there was such a deed executed by Francis Y. Glover, Jr., to the jury.

"2. Because his·Honor charged the jury that the 'deed from Miss Glover to Mrs. Grace purports to convey to Mrs. Grace a moiety of the West Bank plantation;' whereas, he should have charged that the said.deed purported to convey and did convey one-half of that part of West Bank plantation south of the Charleston and Savannah Railroad property, and no more.   The purport of the deed as expressed in the deed being on Miss Glover's part to convey all her right to 'all that tract of land (in Colleton County) bounded on the north by.the Savannah and Charleston Railroad, separating it from the Bonham tract, containing 2,809 acres more or less, and particularly described on a copy of a compiled plat of the West Bank plantation made by Mr. Wilson, said copy, &c.,' and the addition of the words at the close of the description, 'being a moiety of the West Bank plantation, formerly the property of Dr. Joseph Glover,' cannot affect the description that went before.   'Nor does a recital conclude because it is not a direct affirmation.'   a.  Because, if there were a conflict between the two parts of the deed, the rule is that 'when there are two clauses in a deed of which the latter is contradictory of the former, the former shall stand,' and the Judge should have so charged the jury.  b.  Because, in deeds as in other contracts, 'the intent of the parties govern,' and his Honor should have interpreted the deed as the parties do now and always have done, viz : that they are tenants in

common of all that part of West Bank plantation which does not lie south of the Savannah and Charleston Railroad property, as it existed at the date of those deeds, 10th September, 1880, and that the circumstances rendered it impossible to reach any other conclusion, as to the intent of the parties, for the partition and taking possession of the property in 1880 could have been made only with the assent of the life tenant, and it is impossible to conceive that he would have permitted his daughter and his near relative, standing in the place of his son, to disturb a title that he had given for his lifetime and which was good only for his lifetime, for thirteen years after the interchange of the deeds. c. Because the deeds in evidence, which the Court should have construed, show that when Francis Y. Glover, Jr., conveyed to Mrs. Grace the moiety of West Bank plantation, its northern boundaries are not the Charleston and Savannah Road, but 'lands of Prentiss and Hyott and others,' which are, as the plat shows, to the north of the Charleston and Savannah Railroad, and West Bank plantation is described as containing 5,785 acres and 2,809x2 is 5,618, and the words north by the Charleston and Savannah Railroad, 'separating it from a part of the Bonham tract,' showing conclusively that the part of the Bonham tract to the north of the Charleston and Savannah Railroad, and the sole subject of the litigation, was not included in the deed from Miss Glover to Mrs. Grace. That by the above errors it is submitted the jury was misled.

"3. Because the Judge left it to the jury to decide whether or not Miss Glover had by her deed conveyed to Mrs. Grace the part of West Bank plantation to the north of the Charleston and Savannah Railroad; his duty being to construe all the written documents, deeds as well as plats, and say whether by the correct interpretation of these deeds she had done so.

"4. a. Because he charged, 'If you should conclude that by the partition between Miss Glover and Mrs. Grace they did make a complete partition of the entire West Bank plantation, then you can stop right there and find a verdict for the defendants,' meaning the defendants other than the heirs of

Mrs. Grace, as is shown by the charge a few lines below; whereas, his Honor should have charged, if at all correct in leaving the question to the jury, that even if Miss Glover had no rights in the case, the jury should still decide between the Graces and the other defendants. b. Because in making this charge his Honor charged upon the facts of the case.

"5. Because his Honor charged, 'If you conclude that the title has passed out of them, or either of them, to these other defendants or anybody else, if the evidence establishes that, your verdict will be in favor of the defendants, other than the heirs of Mrs. Grace;' whereas, the Court should have construed the deeds, &c., itself, and decided whether or not 'the title had passed out of them,' viz: the plaintiff and the Grace heirs.

"6. Because he refused the plaintiff's seventh request to charge, viz: that if the jury found the land in dispute to be a part of the West Bank plantation, and Miss Glover to be the daughter of Francis Y. Glover, she is entitled to one undivided half of such land, and left it to the jury to determine whether the partition made by the deeds from Mrs. Grace to Miss Glover and Miss Glover to Mrs. Grace was a partition of the whole of West Bank plantation, or of only all of it to the south of the property of the Charleston and Savannah Railroad, as it existed in 1880.

"7. Because he refused the motion for a new trial, the verdict having no evidence whatsoever to support it; the testimony showing: 1st. That the will of Dr. Joseph Glover, probated in 1840, giving to his son, Dr. Francis Y. Glover, the West Bank plantation for life, and after his death to his (Francis Y. Glover's) children, who attained the age of twenty-one years. 2d. That Dr. Francis Y. Glover died 6th of October, 1896, leaving surviving him his two children, Eleanor L. Glover and Francis Y. Glover, Jr., both of whom attained the age of twenty-one years, and that Miss Eleanor L. Glover is still alive. 3. That Francis Y. Glover, Jr., after attaining the age of twenty-one years, conveyed to

Mary E. Grace, by deed dated        January, 1874, and duly recorded 16th January, 1874, 'All my right, title and interest whether the same be present or in the future to be acquired by gift, grant, demise, operation of law, or by contract of parties or otherwise, of, in, or to that certain piece, parcel, or tract of land situate in Colleton County and State aforesaid, described as follows: bounded on the north by land of Prentiss and Hiott and others, east by Edisto River, south by lands of C. L. Clifford and Morris, and on the west by Deer Creek, said to contain 5,785 acres.' 4th. That Mrs. Mary E. Grace and Miss Eleanor L. Glover executed and delivered to each other on 10th September, 1880, interchangeable deeds. That from Miss Glover to Mrs. Grace conveys, 'All my right, title and interest to all that tract of land situate in the county of Colleton and State of South Carolina, and bounded on the north by the Savannah and Charleston Railroad, separating it from a part of the Bonham tract, on the south by lands conveyed to me, the said Eleanor L. Glover, by the said Mary E. Grace, of date September 10, 1880, on the east by the Pon Pon River, and on the west by lands of the estate of Elliott and Deer Creek, containing 2,809 acres, more or less, and particularly described on a copy of a compiled plat of the West Bank plantation by Mr. Wilson, said copy made on the 10th October, 1876, by A. C. Griffith, surveyor, and indicated on said plat by letters, A. B. Z. D. E. R. G. H. X. W. to A.   Being a moiety of the West Bank plantation, formerly the property of Dr. Joseph Glover.' The deed from Mrs. Grace to Miss Glover conveys the southern part of West Bank plantation bounding north on lands of Mary E. Grace, containing 2,800 acres, and designated by certain letters on the plats mentioned in Miss Glover's deed to Mrs. Grace. 5th. That by the plats and the uncontradicted testimony, the Bonham tract formed a part of the West Bank plantation, lying partly to the north and partly to the south of the Charleston and Savannah Railroad. 6th. That by the deed from Dr. Francis Y. Glover, dated 15th

October, 1883, and recorded 24th October, 1883, Dr. Glover recites that in 1859 he had conveyed to the Charleston and Savannah Railroad Company the right of way and in addition four acres, being a part of the town of Jacksonboro, both being a part of the West Bank plantation.    7th. That this action is only for the said four acres and that part of the West Bank plantation lying to the north of the railroad. 8th. All the defendants other than the heirs of Mary E. Grace are in possession of the parts of this land (Bonham tract, consisting of      acres and forming a part of West Bank plantation), and trace their titles back to Dr. Francis Y. Glover or to Mary E. Grace and no other person.

"8. None of these facts were disputed, and his Honor, therefore, erred in refusing the motion for the new trial.

"9. His Honor erred in his understanding of the facts in the case.    a. That nothing 'south of the railroad track was involved in this contention.'    It is the misfortune of counsel that his Honor failed to comprehend their contention in this case; for both in the statement of their contention and argument they endeavored to contend exactly the reverse.    In 1859, confirmed by the deed of 1883, Dr. Francis Y. Glover had conveyed to the railroad company, not only the right of way but also the four acres forming a part of Jacksonboro, two acres being to the south of the right of way.    The northern boundary in the deeds between Miss Glover and Mrs. Grace is not the railroad's right of way (no one contended that it was narrowed to the mere track) but railroad. The deeds Glover to Grace and Grace to Glover were delivered in September, 1880.    Dr. F. Y. Glover died in 1896, October, sixteen years later.    So at the time of the partition between Miss Glover and Mrs. Grace, the two lots were the property of the railroad (for the life of Dr. F. Y. Glover, it is true, but still its property), and the contention was that when the word 'railroad' was used, it meant the property of the railroad, and that to impute any other meaning to the words was the *reductio ad absurdum,* for then it could mean only the land contained between the railroad track, which

was absurd, and it is the misfortune of counsel that his
Honor misunderstood them so entirely as to say, 'their
(plaintiff and the Grace heirs) whole theory was that the
Savannah and Charleston Road simply meant the railroad
track.' b. 'Well, then, the land that lies north of the rail-
road track is the land that was in contention between them
and these other adverse defendants, and the jury was con-
fined to that by the pleadings.' The complaint describes the
land as follows: 'South by lands formerly of Mary E. Grace,
now of the defendants, her children (none was then dead),
and C. M. Grace and land of John Boyd * * * having such
shape, marks, courses and distances as are particularly set
out on a plat of the same made by A. J. Lemacks, surveyor,
on the 22d of April, 1897, and in the possession of the plain-
tiff's solicitors ready to be produced whenever required.'
This plat was produced and proved at the trial, and shows
most distinctly that the two lots to the south of the railroad's
right of way were claimed. His Honor, it is most respect-
fully submitted, erred in the above respect in regard to this
part of the case, which he terms as one of 'confusing and
distracting circumstances'—'one of the most mixed up I have
ever heard.'

"10. Because he abused his discretion in refusing a new
trial, and relying on a second action to rectify a wrong;
whereas, the records showed that there had been a discontinu-
ance in this action, and whether it barred a second action or
not, it should not have influenced his Honor without hearing
argument upon it.

"11. Because in charging, 'you may conclude, if the evi-
dence leading you to the conclusion is a satisfactory conclu-
sion to you, you may conclude that the deed did convey the
whole of the northern tract of land (*i. e.,* land north of the
Charleston and Savannah Railroad). If you are not satis-
fied by the preponderance of the evidence that that is the true
conclusion of the deed or the true state of facts as estab-
lished,' his Honor erred. a. In charging on the facts, clearly
intimating his opinion that that part of the Bonham tract to

the north of the Charleston and Savannah Railroad property did pass under the deed from Miss Glover to Mrs. Grace.    b. In leaving the construction of the deed to the jury.

"12. Because in charging, 'So we come to the contention of the heirs of Mrs. Grace, who contend, first of all, that there was a complete partition made at that time, and that subsequently Mrs. Grace, either herself or other people who claimed under her, to whom she had parted with her right to the land, made conveyances to them, i. e., to all the defendants who are in possession and claiming parts of the land,' his Honor erred in ignoring the fact that many of the 'defendants who are in possession and claiming parts of the land' are in such possession and claim such parts by deeds from Dr. Francis Y. Glover, the life tenant, and not from Mrs. Grace, directly or indirectly.

"13. In charging, 'You will have to write a long verdict if you conclude to award damages against each one.    If you conclude that Miss Glover and the heirs of Mrs. Grace are not entitled to recover the land for any reason, then your verdict will be: "we find for the defendants other than the heirs of Mrs. Grace,' " his Honor thereby influenced the jury to find a short verdict and not a troublesome one to frame.

"14. Because his Honor erred in rejecting all testimony relative to the transactions between the plaintiff through her agent and attorney in regard to the four lots comprising the part of Jacksonboro with the railroad company, the testimony being that some of the defendants other than the heirs of Mrs. Grace held said lots by leases from the railroad company, and it is submitted that as a tenant cannot deny his landlord's title, any evidence which would have shown that the railroad company surrendered these lots to such agent and attorney, was not only competent and relevant but also material."

The defendants, the heirs of Mary E. Grace, on the following exceptions:

"(1). Because his Honor erred in not construing the deed of conveyance of Eleanor L. Glover to Mary E. Grace as only

a release of her interest in that part of the West Bank plantation lying south of the property of the Charleston and Savannah Railway Company, leaving undivided between them all of the lands of the said West Bank plantation lying north of the lands or property of the said railway company, and that the word moiety used in said deed referred only to the lands divided of the said West Bank plantation lying south of the lands of the said railway company, and also erred in leaving the construction of said deed to the jury.

"(2). Because his Honor erred in charging the jury as follows: 'If Miss Glover has parted in the deed to Mrs. Grace with all of the West Bank plantation except what Mrs. Grace conveyed to Miss Glover, that is the southern part of it, then she has no further interest in the suit here. You understand that if Miss Glover by this deed to Mrs. Grace intended to convey the whole of the northern half or moiety of the West Bank plantation, then she parted with her entire interest in it, and has no further claim to it. She is stopped by estoppel and stopped by her deed of conveyance, that is the point which you must first determine in this case. If you should conclude that by the partition between Miss Glover and Mrs. Grace they did make a complete partition of the entire West Bank plantation, then you may stop right there and find a verdict for the defendants, because there could be no claim for partition here if that should be the case between Miss Glover and the heirs of Mrs. Grace. That is a point for you to determine, and it is only an incident to the action you and I are now seeking to settle—that is, the right of the plaintiff and these other people to recover possession from these parties in possession and have it partitioned. If there is no rightful partition, of course, the balance of the case will fall to the ground. In the determination of the question, then, as to whether or not there was a complete partition made, you, of course, will be governed by the terms of the deed, especially this deed from Eleanor L. Glover to Mary E. Grace, which describes the land as being bounded on the north by the Charleston and Savannah Road, also states

that the railroad separates the land from a part of the Bonham tract;' whereas, he should have charged the jury that the construction of the deed of conveyance from Miss Glover to Mrs. Grace belonged exclusively to the Court, and that the jury were bound to take the Court's interpretation of the said deed; that the intention of the grantor, as gathered from the whole instrument and all the surrounding circumstances, was only to release to the said Mary E. Grace that portion of the West Bank plantation lying south of the land of the Charleston and Savannah Railway Company's land, and not to make a complete and entire division of the whole of the West Bank plantation, but only of that portion lying to the south of the said railway company's lands, leaving the portion of the said plantation to the north of the said railway company's lands undivided, the same being a part of the Bonham tract, which tract formerly composed a part of the entire West Bank plantation; that such being the construction of the deed by the Court, and there being no contest as to said deed, the verdict of the jury would have to be in favor of the plaintiff and the heirs of Mary E. Grace, for all lands of the West Bank plantation lying north of the land of the Charleston and Savannah Railway Company's land, and that under the construction of the said deed by the Court, Miss Glover and the heirs of Mary E. Grace would be entitled to partition of said land among them.

"(3) Because his Honor erred in leaving the construction and interpretation of the deed of Miss Glover to Mary E. Grace to the jury, it being left by the Court to the jury to say what was the intention of the grantor in making such deed and to say from its terms whether or not the division between them was intended to be a complete division of the entire West Bank plantation, a question that could only be answered by a construction of the language used and the terms employed as gathered from the whole instrument and all the surrounding circumstances—an answer to be given exclusively by the Court and not by the jury.

"(4). Because his Honor erred in his charge in leaving

it to the jury to say whether or not that portion of the West Bank plantation lying north of the Charleston and Savannah Railroad was included in the partition between Miss Glover and Mrs. Grace—a question that could only be determined by a construction of the deed from Miss Glover to Mrs. Grace from the language used and the terms employed in the instrument itself.

"(5). Because his Honor erred in charging the jury, 'that in case their verdict should be in favor of the plaintiff, it should be not only for the land but for the rental value as against each party in possession for the particular part that defendant holds,' as the issue of title alone could be determined by the jury, exclusive of the question of damages for the withholding of said lands. While no damages were found, it is not improbable that this charge had its influence upon the jury and in shaping their verdict.

"(6). Because his Honor erred in directing the verdict of the jury, 'we find for the defendants,' to be reformed so as to read, 'we find for the defendants other than the heirs of Mary E. Grace,' thus giving the whole of the lands north of the Charleston and Savannah Railroad to the defendants other than the heirs of Mary E. Grace, regardless of the fact whether or not the said Mary E. Grace, or any authorized person for her, had ever parted with the title to the whole of these lands; especially when it was in evidence and known to the Court that the whole of the land on the north of the said railroad had never been conveyed away by the said Mary E. Grace, or by any one authorized to convey the same absolutely and forever.

"(7). Because his Honor erred in refusing the motion of the plaintiff and the heirs of Mary E. Grace for a new trial from the finding of the jury on the issue of title raised by the answer of certain of the defendants and submitted to them; and in dismissing the complaint of the plaintiff without any hearing of the said cause on the equity side of the Court, and simply on the finding of the jury on the issue of title raised by the defendants other than the heirs of

Mary E. Grace by their answers to plaintiff's complaint for partition."

*Messrs. Young & Young* and *W. F. Fishburne,* for plaintiff, appellant, cite: *As to construction of boundaries:* 17 Ency., 2 ed., 8; 1 Brev., 301; 4 Green. Ev., 265. *Where refusal of new trial is denial of justice, it should be reversed:* 16 S. C., 124; 45 S. C., 490; 58 S. C., 222; 54 S. C., 605.

*Mr. James F. Izlar,* for defendants, appellants, cites: *Intention of parties to deed is essence of construction:* 15 S. C., 32; 35 S. C., 314; 42 S. C., 312; 23 S. C., 235; 42 S. C., 58. *As to damages against defendants:* 23 S. C., 391. *Court should not change a verdict:* 41 S. C., 138; 37 S. C., 159; 13 S. C., 5.

*Messrs. Howell & Gruber,* contra, cite: *As to construction of description:* 1 Rich., 140; 4 Ency., 2 ed., 797. *Misstatement of facts is not error of law:* 42 S. C., 474.

July 7, 1903. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an action for the partition of certain lands described in the complaint, in which all the appellants claim to be tenants in common, and that the respondents were in possession of certain portions of said lands respectively and claimed some interest therein. The defendants in possession answered the complaint, setting up (1) a general denial of the title alleged in the complaint; (2) that they were the exclusive owners in fee of the several parcels occupied by them; and (3) adverse possession. The question of title raised by the pleadings was submitted to a jury, that rendered a verdict in favor of the defendants other than the heirs of Mary E. Grace. A motion was made for a new trial on the minutes of the Court, but was refused. The plaintiff and certain of the defendants appealed upon exceptions, which will be set out in the report of the case.

Without considering the exceptions seriatim, we will en-

deavor to dispose practically of all the questions presented by them. In order to understand the questions raised by the exceptions, it will be necessary to state the facts out of which the issues arose. Joseph Glover died in 1840, leaving of force a last will, wherein he devised to his son, Dr. Francis Y. Glover, for life the lands described in the complaint known as "West Bank," with remainder to his children. Dr. Francis Y. Glover had two children, Eleanor L. Glover, the plaintiff, and F. Y. Glover, Jr. In 1874, F. Y. Glover, Jr., conveyed to Mary E. Grace all his interest in the said "West Bank" plantation. In 1880, Eleanor L. Glover and Mary E. Grace partitioned the said land between them by executing cross-conveyances. As the description of the land conveyed by Eleanor L. Glover to Mary E. Grace is the fact giving rise to this case, we will set it out in full. It is as follows:

"Know all men by these presents, that I, Eleanor L. Glover, of Habersham County, State of Georgia aforesaid, spinster, in consideration of the sum of five dollars and for the purpose of partitioning the land known as West Bank, and more particularly described herein hereafter, the said five dollars to me paid by Mary E. Grace, wife of James W. Grace, in the State aforesaid, have granted, bargained, sold and released, and by these presents do grant, bargain, sell and release unto the said Mary E. Grace all my right, title and interest to all that tract of land situate in the county of Colleton and State of South Carolina and bounded on the north by the Charleston and Savannah Railroad separating it from part of the Bonham Tract, on the south by lands conveyed to me the said Eleanor L. Glover by the said Mary E. Grace of date September 10th, 1880, on the east of the Pon Pon River and on the west by lands of the estate of Elliott and Deer Creek, containing twenty-eight hundred acres, more or less, and particularly described on a copy of a compiled plat of the West Bank plantation made by M. Wilson, said copy made on the 10th of October, 1876, by W. C. Griffith, surveyor, and indicated on said plat by the letttters 'A,' 'B,' 'D,' 'E,' 'F,' 'H,' 'X,' 'W,' to 'A,' being a moiety of the West Bank

REP.] April Term, 1903.

plantation, formerly the property of Dr. Joseph Glover."

Mrs. Grace's deed is similar, except as to names and land conveyed. After making deeds of conveyance to certain portions of her land, Mrs. Grace, in 1883, made another deed to her husband, James W. Grace, as trustee, in which she described the land conveyed as "all the balance or portion now possessed by me of all that plantation known as West Bank (the same originally a moiety) * * * containing in the whole that is now owned about 2,000 acres * * * and bounded as follows: On the north by the track of the Charleston and Savannah Railway Company, south by balance of said West Bank tract, the property of Eleanor L. Glover * * * This property now conveyed, together with the moiety owned by Eleanor L. Glover, having been for a number of years the property of Dr. Joseph Glover." The plaintiff contends that inasmuch as the conveyance by her to Mrs. Grace mentioned the northern boundary as the "Charleston and Savannah Railroad," that the lands lying to the north of the railroad did not enter into the partition, and that she and the heirs at law of Mary E. Grace are the owners thereof as tenants in common. In this contention the heirs at law of Mrs. Grace, who were made defendants, joined and the issue was submitted to the jury.

We will first consider whether those exceptions can be sustained which assign error on the part of his Honor, the presiding Judge, in leaving to the jury the construction of the deeds instead of construing them himself. We find in the record that his Honor charged the jury: "Those deeds are before you—that is, if you find they are properly executed, and the Court must construe them and tell you what effect they have in this case." The plaintiff's first request was as follows: "It is the duty of the Court to construe all written instruments, and it is your duty to accept such construction." The Circuit Judge said: "I so charge you. I have endeavored to construe for you the written instruments in this case so far as it has occurred to me will guide you in the determination of the issue presented

here for you to determine, and you will accept that construc-
tion as the true construction of the written instrument."
Other portions of the record are to the same effect, but we
deem the foregoing sufficient to show that the exceptions
raising this question cannot be sustained.

We will next consider those exceptions complaining that
the presiding Judge should have charged the jury that the
will introduced was the will of Dr. Joseph Glover, stating its
terms, and not left it to the jury to say whether or not there
was such a will, and what were its terms; that he
should have charged that the deed of F. Y. Glover,
Jr., to Mary E. Grace was his deed and conveyed to
her the property which it purported to convey, and not left
to the jury the question whether or not there was such a deed.
If these facts were in dispute, then they were properly sub-
mitted to the jury. If, however, they were not contested,
and conceding there was error, it was not prejudicial to the
rights of appellants. The rule upon the subject of constru-
ing written instruments is stated in the case of *Thompson* v.
*The Family Protective Union,* 66 S. C.

We will next consider those exceptions insisting that the
presiding Judge should have charged that the deed from Mrs.
Glover to Mrs. Grace conveyed one-half of so much of West
Bank as lay on the south side of the railroad, "and no more,"
and should have construed the same as the appellants
do, namely: that the plaintiff and the heirs of Mrs.
Grace are cotenants of so much of West Bank as lies
to the north of the railroad. That he erred in leaving to the
jury, and should have "decided whether or not the title had
passed out of them, viz: the plaintiff and the Grace heirs." In
the case of *Norwood* v. *Byrd,* 1 Rich., 135, the rule is thus
stated: "It is contended that the land described in the deed
cannot be located so as to cover the residue of the Norwood
grant. If the deed had merely described the land conveyed
as the residue of the Norwood grant not sold to Johnson,
the intention of the parties would have been clear and no
question could have arisen respecting its location, since there

is no dispute respecting Johnson's line nor the lines of the grant. But a discrepancy is produced by the erroneous description in the deed of the lines and boundaries of this residue. According to the deed, the agreed on line would be in a direction at right angles to the actual line, so as to locate the residue on the southwest instead of the northwest side of the grant. The rules of location permit the courses of lines and boundaries to be rectified *according to proof of the intention of the parties* to an extent quite sufficient to correct this error. Lands have been located in violation of almost every rule. Indeed, location is said to be a question of *evidence, and cannot be reduced to fixed and definite rules. Coates* v. *Mathews,* 2 N. & McC., 99. A correct location consists in the application of any one or all of the rules to the particular case, and when they lead to contrary results, that must be adopted which is most consistent with 'the intention apparent on the face of the deed. *Colclough* v. *Richardson,* 1 McC., 167. To give effect to the intention of the parties, the agreed on line described in the deed may be corrected so as to correspond with the fact. * * * But the simple question not involved in technical rules nor placed beyond the reach of plain, practical common sense, is whether the defendant shall be deprived of his land, because the residue of the Norwood grant so plainly expressed in the deed and proved to have been the subject of purchase, was imperfectly or erroneously described by metes and bounds. In the construction of a deed where there is a contradiction in the description of the premises granted, the Court may reject part of the description as false or mistaken for the purpose of giving effect to the deed" (italics ours).

In vol. 1 of Starkie on Evidence, it is said: "It has been frequently doubted whether a particular question be one of law or of fact. Thus far it is clear that, whenever upon particular facts found, the Court by the implication of any rules of law can pronounce on their legal effect with reference to the allegations on the record, such inference is matter of law. It is also clear that whenever the Court cannot pronounce on

3—67

the legal effect of particular facts, and when it is requisite to enable them to do so that the jury should find some other inferences or conclusions, such further inferences or conclusions are questions of fact." It is unquestionably the duty of the Court, in construing a written instrument, to interpret *its language,* and it may also state the effect thereof, where it is susceptible of but one inference; but where the inference to be drawn from the facts stated in the instrument is in dispute and such facts susceptible of more than one inference, then the question must be determined by the jury, especially when the inference to be drawn is dependent upon other facts in the case. In the case under consideration, the facts stated in the deed were susceptible of more than one inference, and were likewise dependent for their solution upon other facts in the case. The exceptions raising this question must, therefore, be overruled.

The next question that will be considered is whether the presiding Judge erred in refusing to charge plaintiff's seventh request, which was as follows: "If you find that the land in dispute passed under Dr. Glover's will as part of the West Bank plantation, and that the plaintiff is a daughter of Francis Y. Glover, she is entitled to one undivided half of such land, and you must also give her one-half of the fair rental value of the land since the death of Dr. Francis Y. Glover, whether conveyed by Mary E. Grace or not." His Honor said: "I cannot charge you that, because that takes away from you what I have already charged you was a point in the case for you to determine, as to whether or not this was a partition of the whole West Bank plantation or only all of it that lay south of the railroad. Therefore, the seventh request is refused." This reason is satisfactory to the Court.

We will next consider whether his Honor, the presiding Judge, erred in refusing the motion for a new trial. This motion was made upon the minutes of the Court, and involved only questions of fact. We are satisfied with the ruling of the Circuit Judge upon this question.

The next question for consideration is whether the Circuit Judge erred in his understanding of the facts, in saying that nothing south of the railroad was involved in the contention. We do not think the presiding Judge misunderstood the facts; but, even if he did, the reasons assigned by him in refusing the motion for a new trial would not entitle the appellants to a reversal of the order, provided it was otherwise correct.

These views render unnecessary the consideration of any other question presented by the exceptions.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.