8439

WATSON v. PASCHALL.

1. CONSTRUCTION OF CONTRACTS—ISSUES.—Where there is other competent evidence on the issue of the intention of the parties when making a contract other than the writings and the whole evidence is susceptible of more than one inference, the inference to be drawn therefrom is for the jury.

2. IBID.—JUDGMENTS—RES JUDICATA.—In a former appeal in this case from an order of nonsuit, this Court held that there was no difference between the words "accepted" and "accept" used respectively in the original and delivered telegrams, but in another trial granted by this Court other competent evidence on the issue of intent was received, and that construction of the telegram was not binding on the trial Court.

3. IBID.—Contracts by telegrams should be construed by the words used in the delivered message and not by considering words first written in by sender, but erased before delivery to carrier.

Before Aldrich, J., Chesterfield, November, 1911. Reversed.

Action by E. T. Watson against Paschall & Co. Defendants appeal.

*Messrs. R. T. Caston, Edward McIver & W. P. Pollock,* for appellants. *Mr. McIver* cites: *The sendee is bound only by message delivered:* 88 S. C. 498. *Contract should be construed in the light of the surrounding circumstances:* 68 S. C. 440.

*Messrs. Stevenson & Prince,* contra, cite: *Nothing in telegram to show offer was declined:* 83 S. C. 41. *Party can not complain of a statement of his claim:* 75 S. C. 19. *Contracts should be construed by the words used:* 19 S. C. 445.

February 19, 1913. The opinion of the Court was delivered by

Mr. Chief Justice Gary. This is an action for commissions, alleged to be due the plaintiff as broker, for negotiating the sale of the timber on certain lands.

There was a former decision in this case, which is reported in 83 S. C. 366.

On the 21st of February, 1905, the plaintiff and the defendants entered into an agreement, the terms of which, are embodied in the following letter:

"Mr. J. R. Paschall, Charleston, W. Va.:

"I hereby agree with you to accept five thousand ($5,000) dollars commissions, for the sale of your timber to Holley & Stephenson, or to any others who may hold under them, in any deal which you may make with Holley & Stephenson; the same to be paid twenty-five hundred dollars out of first cash payment, and twenty-five hundred dollars out of the second payment. E. T. Watson."

On the 21st of February, 1905, the firm of Holley & Stephenson made the following offer to the defendants:

"Gentlemen: We will pay ninety thousand ($90,000) dollars for the timber covered by your option dated 22d of December, 1904, to the undersigned, Holley & Stephenson, and also the timber on the McNair Covington, Delaney, Ingram, Douglass, Ellerbe, Campbell and Frost tracts, adjoining the tracts mentioned in said option * * *"

The option dated the 22d of December, 1904, related to the timber on lands owned by the defendants, while the said offer, not only embraced those, but adjoining lands of the parties therein mentioned.

In order to induce Holley & Stephenson, to buy the timber on the lands owned by the defendants, they stated that they would undertake to buy said additional lands, at a price not exceeding five thousand dollars, and that they would let Holley & Stephenson have them, at the price paid for them. Holley & Stephenson rejected this offer.

On the 27th of February, 1905, the plaintiff telegraphed to the defendants: "Stephenson will not increase offer. Preparing to send to examine other property. Think best accept."

In answer to the question: "What was the next that occurred between you and Mr. Paschall?" the plaintiff testified as follows:

"Following the telegram which has been put in evidence, Mr. Paschall called me up over the long distance telephone on the morning of the 28th, and asked me what the situation was, and I told him as far as I could see, we couldn't do anything more, and he asked me what I thought my people would be willing to give for the timber, and I told him I thought they would give ninety-thousand dollars for the timber under option, and he told me to sell it. I told him I would go and see Mr. Stephenson, and asked Mr. Paschall where he was, and he told me to wire him to Warrenton. I went to see Stephenson and offered him the timber for ninety

thousand dollars, the timber under option, and he declined
it, and I wired Mr. Paschall— Did you send this telegram
to Mr. Paschall? Yes, sir; I sent this telegram to Mr.
Paschall."

The telegram was as follows: "Stephenson will give
ninety thousand for the timber including additional tracts.
Offer subject immediate acceptance. Can't raise him a
penny."

The defendants sent the following answer to that tele-
gram: "We accepted Mr. Stephenson's offer. If he declines
to stand up, we can do no more business with him."

When the telegram was delivered to the plaintiff, it had
been erroneously transmitted in two particulars: the word
"accepted" had been changed into "accept," and the word
"no" had been omitted; so that it read as follows: "We
accept Mr. Stephenson's offer; if he declines to stand up,
we can do more business with him."

The defendants refused to convey the lands mentioned in
the telegram, which Watson sent to them on the 28th of
February, 1905.

His Honor, the presiding Judge, upon the request of the
plaintiff's attorneys, charged the jury as follows:

"If it being admitted that this telegram was in reply to
the telegram in evidence, reading as follows: 'Stephenson
will give ninety thousand for timber, including additional
tracts. Offer subject to immediate acceptance.
Can't raise him a penny,' under the construction of
the telegram by the Supreme Court in this case, the
Court construes the two telegrams together to mean, that the
defendants accepted the proposition contained in the tele-
gram which they answered."

The error assigned is, that it was a charge on the facts.
The plaintiff in his testimony thus states his contention:
"The situation is simply this: That Mr. Stephenson was
offering ninety thousand dollars for the entire boundary, and
Mr. Paschall, up to the 28th of February, was wanting to

deal on the timber under option. I was trying to get one or the other to make the concession and close the deal, and I got that concession in the telegram of acceptance."

The telegram sent by the plaintiff to the defendants on the 28th of February, 1905, to wit: "We accepted Stephenson's offer. If he declines to stand up, we can do no more business with him," was unquestionably in response to the message quoted in the said charge, and, under the former ruling in this case, the question whether it was the intention of the defendants, to accept the offer contained in the telegram just mentioned, presented a question of fact to be determined by the jury. The former appeal was from an order granting a nonsuit, and in view of the question then under consideration, requiring a construction of the telegram, it was immaterial whether the defendants had already accepted an offer previously made, or by their telegram, intended to accept the offer then made. It was for this reason, that this Court ruled that there was no material difference in the effect of the words "accept" and "accepted," mentioned in the telegram. The word "accepted" in its ordinary acceptation, of course, applies to the past, while the word "accept" is applicable to the present. When, however, as in this case, there was other competent testimony to be considered in determining whether the defendants intended to accept the offer in the telegram, then the construction of the telegram by the Court, was not conclusive of this question, but the inference to be drawn from all the facts in the case, including the construction of the telegram by the Court, was to be determined by the jury. The defendants, of course, were bound by the telegram as they sent it, and not as it was delivered. *Eureka Mills* v. *Tel. Co.,* 88 S. C. 498.

The language used in the following authorities, which is quoted with approval in *Holliday* v. *Pegram,* 89 S. C. 73, sustains this ruling:

"Courts, in the construction of contracts, look to the language employed, the subject matter and the surrounding circumstances. They are never shut out from the same light, which the parties enjoyed, when the contract was executed, and, in that view, they are entitled to place themselves, in the same situation, as the parties who made the contract, so as to view the circumstances, as they viewed them, and so to judge of the meaning of the words, and of the correct application of the language, to the things described." *Nash* v. *Towne,* 5 Wall. 689.

"It is unquestionably the duty of the Court, in construing a written instrument, to interpret its language, and it may also state the effect thereof, where it is susceptible of. but one inference; but where the inference to be drawn, from. the facts stated in the instrument, is in dispute, and such facts susceptible of more than one inference, then the question must be determined by the jury, especially when the inference to be drawn, is dependent upon other facts in the case." *Clover* v. *Gasque,* 67 S. C. 34, 45 S. E. 113.

"Doubtless the general rule is, that it is the province of the Court, to construe written instruments; but, it is equally well settled, that where the effect of the instrument depends, not merely on its construction and meaning, but upon collateral facts and extrinsic circumstances, the inference of fact to be drawn from the paper, must be left to the jury." *West* v. *Smith,* 101 U. S. 263.

"The construction of a contract, is a question for the Court, if the terms of the contract, and the extrinsic facts, which may effect construction, are free from dispute. This rule appplies where the contract consists of several writings, as where it consists of letters exchanged between the parties. * * * If the terms of the contract are in dispute, or it is possible, to draw more than one inference from the established facts, which are relied on, to show the intention of the parties, the jury must determine such facts, or decide which of such inferences, is the correct one. The Court should, in

such cases, submit the question of fact to the jury, under proper alternative instructions, as to the construction to be given, in the event of each possible finding of fact, by the jury." 2 Page on Contracts, sec. 1129.

The exception raising this question is sustained.

The telegram which the defendant sent to the plaintiff on the 28th of February, 1905, to wit: "We accepted Mr. Stephenson's offer. If he declines to stand up, we can do no more business with him," shows upon its face, that as originally written, it contained the words: "If he will furnish money will buy rest."

His Honor, the presiding Judge, charged the jury, that the erased words could not be considered by the jury, and this is made the ground of an exception.

It is only necessary to refer to the case of *Straub* v. *Screven,* 19 S. C. 445, to show that this exception cannot be sustained, in which it was held, that contracts must be construed by the words they contain, and not with reference to words erased.

Judgment reversed and case remanded to the Circuit Court for a new trial.

MR. JUSTICE FRASER *did not sit in this case.*