13231

RONEY v. UNION NEWS COMPANY

(160 S. E., 149)

88

*Mr. Henry E. Davis,* for appellant,

*Mr. P. H. McEachin,* for respondent,

August 28, 1931.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This action, commenced in the Court of Common Pleas for Florence County, June 14, 1930, was instituted by the plaintiff for the recovery of damages, actual and punitive, against the defendant in the sum of $2,500.00 "for the alleged failure to return to the plaintiff promptly, after demand therefor, the sum of Five Hundred ($500.00) Dollars that had been put up by him as a cash bond." Since the appeal involves the pleadings, and for the purpose of giving a clear understanding of the questions before the Court, we quote herewith the plaintiff's complaint.

COMPLAINT

"The plaintiff above named complaining of the defendant herein, alleges:

"I. That the plaintiff is a resident of the County of Florence, State of South Carolina, and that the defendant is a corporation organized and existing as plaintiff is informed and believes, under the laws of the State of New York, and is engaged in the City of Florence, in a general restaurant business maintaining a restaurant at the Atlantic Coast Line Passenger Station.

"II. That for several years prior to May 4, 1930, plaintiff had been in the employ of the defendant company at Florence, S. C., as the manager of its restaurant at that point and that a short time prior to May 4, 1930, the defendant attempted to transfer plaintiff to Richmond, Virginia, as the manager of its restaurant at that point, at an increase of salary of Five and No/100 ($5.00) Dollars, per week, but that due to connections that plaintiff had in Florence, he refused to transfer, and although he requested the defendant to continue him as manager at Florence, the defendant refused to do so and thereupon discontinued his services.

"III. That when the plaintiff was employed by defendant as manager of its restaurant at Florence, S. C., that plaintiff was required to post as security for the proper handling of any money that might come into his hands belonging to the defendant, the sum of Five Hundred and No/100 ($500.00) Dollars, which amount in accordance with defendant's requirements, plaintiff placed in its hands and which amount the defendant continues to hold after demand made therefor, and after plaintiff had been discontinued from its service.

"IV. That the said sum of Five Hundred and No/100 ($500.00) Dollars, was deposited with the defendant with the understanding that when, or in the event plaintiff left the defendant's service and properly accounted for all the money and property of the defendant which had come into his possession, that the defendant would immediately and promptly return the said sum of Five Hundred and No/100 ($500-.00) Dollars, to the plaintiff.

"V. That upon plaintiff being relieved as manager of the defendant's restaurant at Florence, S. C., that he immedi-

ately made account for all money and property of the defendant which had come into his possession, and that the said account was checked by the defendant and accepted as correct, and no deficit or liability existed from the plaintiff to the defendant at the time of the plaintiff's leaving.

"VI. That upon accounting to the defendant for all money and property which had come into his possession and belonging to the defendant, and upon his account being accepted as correct, the plaintiff made demand upon defendant for the said sum of Five Hundred and No/100 ($500.00) Dollars, and although the said sum was the property of the plaintiff, and he was entitled to the immediate possession and payment thereof, the defendant fraudulently and willfully with the intent to deprive plaintiff of his money, in utter disregard of his rights, refused to deliver same to the plaintiff.

"VII. That the defendant after plaintiff had accounted for all money and property placed in his possession in order to retain possession of the said sum of Five Hundred and No/100 ($500.00) Dollars, in violation of plaintiff's rights, fraudulently and maliciously fabricated a charge and accusation against the plaintiff, that the plaintiff had while in the employ of the defendant as manager of its restaurant at Florence, S. C., fed on one occasion, approximately one hundred Marines, and that he had failed to account for the receipts of feeding these one hundred men and had feloniously appropriated and stolen the money received from these men, all of which the defendant knew was false and which charge the defendant manufactured and fabricated for the purpose and with the intent of defrauding and depriving plaintiff of his money.

"VIII. That by reason of the retention of plaintiff's money by the defendant while plaintiff was out of employment due to his discharge by the defendant, plaintiff has suffered from lack of money with which to properly support his family and himself, and has been humiliated and embarrassed in his credit and business reputation.

"IX. That by reason of the fraudulent and willful retention of plaintiff's said money by the defendant after demand made therefor, and after due account had been made by the plaintiff to the defendant, and by reason of the utter willful and gross disregard by the defendant of plaintiff's rights to the said money, plaintiff has been damaged in the sum of Twenty-five Hundred and No/100 ($2,500.00) Dollars.

"Wherefore, plaintiff demands judgment against the defendant for the sum of Twenty-five Hundred and No/100 ($2,500.00) Dollars, and for the costs of this action."

In due time the defendant, by its attorney, served the following notice and answer:

## MOTION TO STRIKE OUT

"To P. H. McEachin, Esq., attorney for plaintiff:

"You will please take notice that on the call of the above entitled case for trial, the defendant will move the Court for an order striking from the complaint as irrelevant and redundant the following allegations thereof:

"1. That portion of Paragraph VI, beginning with the word 'Fraudulently' on line 8 thereof and ending with the word 'rights' on line 9 thereof.

"2. All of Paragraph 7 thereof.

"3. All words 'fraudulent and willful' in line 1 of Paragraph IX thereof.

"4. That portion of Paragraph IX thereof, beginning with the word 'and' on line 4 thereof and ending with the word 'money' on line 6 thereof.

"This motion will be based on the complaint, a copy of which you have."

## ANSWER

"The defendant, having given notice of a motion to strike from the complaint certain matter as irrelevant and redundant, and not waiving but expressly reserving its right to make such motion and to answer anew in case said

motion, or any part thereof, is granted, answering the complaint herein:

"1. Admits the allegations of Paragraph 1 thereof.

"2. Denies each and every other allegation in said complaint contained."

The case was tried at the November, 1930, term of the said Court before his Honor, Judge John S. Wilson, and a jury. When the case was called, the defendant pressed the motion to strike out certain portions of plaintiff's complaint, in accord with the notice served, set forth above, which motion was refused, except as to Paragraph 8, which was ordered stricken out, the plaintiff consenting thereto. Following this ruling of the trial Judge, the defendant asked for time to answer anew in accord with the notice contained in the original answer filed in the case. This motion was overruled, and the case ordered to trial, which resulted in a verdict for the plaintiff in the sum of $500.00 actual damages and $350.00 punitive damages. The defendant's motion for a new trial being overruled, from the judgment entered on the verdict the defendant has appealed to this Court.

In considering appellant's exceptions imputing error to the trial Judge we shall adopt the well-arranged plan outlined by appellant's counsel, stating the questions raised, and shall dispose of the same in the order presented by counsel.

Question No. I. "Did the trial Judge err in refusing to strike from the complaint certain matter as irrelevant and redundant as being a mere legal conclusion on the part of the pleader?"

The exceptions upon which this question is based allege error because the trial Judge refused defendant's motion to strike out certain portions of the complaint quoted above and referred to in defendant's notice, upon the ground that the said allegations amounted merely to a legal conclusion, with no facts stated to support such conclusion. Succinctly

stated, the allegations which the defendant objected to may be summed up (quoting from respondent's brief) as follows:

1. Appellant held $500.00 of respondent's money which it agreed to return upon discontinuance of respondent's services immediately after proper checking of his accounts.

2. Respondent's accounts were checked and accepted as correct by an agent of appellant.

3. Appellant refused respondent's demand for his $500-.00, knowing his accounts to be correct in every particular.

4. Appellant, with knowledge of the correctness of respondent's accounts, fabricated a charge of embezzlement against respondent in order to defraud him of his money.

5. Respondent suffered damage because of the fraudulent retention of his money by appellant.

It will be observed that the fraud alleged is not in the acquisition of money or other property but in the retention of money. In our opinion, the allegations are such as to make out the charge of fraud. The exceptions raising this question are, therefore, overruled.

Question No. II. "Did the trial Judge err in refusing to allow the defendant to file a new answer?"

In the first place, we do not understand that the appellant presented a new answer to the Court. In order to fully understand what transpired at the trial regarding this matter, we quote from the record as follows:

"The Court: I think I'll overrule your motion. I think there is enough in the complaint to hold. The question now is—you gave notice you wanted to answer, and paragraph 8th is stricken out. Do you want time to answer?

"Mr. Davis: Yes, sir, I want time.

"The Court: If you can show me you are prejudiced or surprised, I will grant you time.

"Mr. Davis: I am ready to go to trial, but I reserve the legal right to answer the complaint. I think as a matter of law I have that right, but I am not going to argue with

your Honor. I want it understood that his only allegation of fraud is with reference to a charge of feeding Marines.

"The Court: My ruling is paragraph eight is stricken out."

In view of this statement of appellant's counsel, it is clear that the trial Judge was led to believe that appellant was not insisting upon a continuance of the case for the purpose of answering anew. Counsel stated that he was ready, for trial. Furthermore, granting motions for amending a pleading is largely a matter of discretion on the part of the trial Judge; and there is absolutely no showing that the appellant was in any way prejudiced by his Honor's ruling on this question. The appellant was permitted to introduce all testimony offered. In our opinion the exceptions raising this question are without merit and are overruled.

Question No. III. "Was there error on the part of the trial Judge in overruling defendant's motion for direction of a verdict?"

In our opinion, it is unnecessary to discuss the testimony introduced at the trial of the case, and quoting the same would serve no useful purpose, but deem it sufficient to state that the testimony introduced at the trial had a bearing on all the material issues raised under the pleadings and tended to establish the same; that is, under the rule, the testimony raised an issue of fact for the jury, and his Honor therefore committed no error in overruling the defendant's motion for direction of a verdict on both causes of action. However, as bearing on the question of the alleged fraudulent acts of the defendant, and furnishing, in part, a basis for the recovery of punitive damages, we quote herewith a letter written by the comptroller and officer or agent of the defendant company, and transmitted by defendant to the plaintiff:

COPY OF LETTER

"The Union News Company, New York, N. Y.

May 19th, 1930.

"Mr. W. C. Hooper, Manager, Department of Restaurants, · Building.

"Dear Sir:

"In connection with the audit of the account of former agent in charge at Florence, S. C., operation, we are advised by the A. C. L., that marine movements out of Port Royal on train 82 resulted in feeding at Florence.

"It would appear that it was not unusual for train 82 to move these marines who were fed at our Florence operation. In the connection we have advices from the General Passenger Agent, two of which are before me at this time, one under date of February 8th indicating the moving of 100 marines, the other under date of May 14th covering 101 marines.

"I see no evidence in the weekly reports that the sales covering these movements were reported and it appears to me that definite information should be had as to the failure of the former agent to report these sales. What happened to this money? We can find no reflection of these receipts in the sales reported.

"In view of the foregoing I have requested further details from the A. C. L. offices who have expressed a desire to assist me in every possible way as the Railroad Company cannot understand why our revenue at the Florence operation has been reduced so entirely out of proportion to the decline in traffic. Also the receipts for the last few weeks indicate that someone must have been holding out on sales as we are now receiving an increase substantial enough to warrant our belief that an investigation is in order so as to determine just what happened to our sales receipts in the past.

"While this investigation is being made we feel that the former agent should give us a clean story so as to expedite the audit of his account as much as possible and enable us to make settlement at the earlist possible date.

"Please review this matter and advise me without delay.

"Very truly yours,

"Comptroller."

Question No. IV. "Did the trial Judge err in refusing to construe certain letters introduced in evidence?"

The letters involved under this question were letters received by the plaintiff from the defendant regarding the matters at issue, and they contained no legal terms which called for a construction by the Court for the benefit of the jury. The language contained in the letters was plain and simple, and therefore needed no explanation as to its meaning. It is very likely that his Honor, the trial Judge, thought the members of the jury as well qualified to understand the meaning of the letters as he was, and, being of that opinion, he properly refused to undertake to construe the same. If his Honor had undertaken to construe the language involved in those letters, he would have invaded the province of the jury and very likely been charged with charging on the facts. Furthermore, the effect of these letters depended, not merely on a construction and meaning of the language contained therein, but also upon collateral facts and extrinsic circumstances, which clearly made the issue one for the jury. See *Watson v. Paschall,* 93 S. C., 537, 77 S. E., 291; *Zemurray v. Menos,* 107 S. C., 361, 92 S. E., 1039. The exception raising this question is overruled.

Question No. V. "Was there error in refusing to grant a new trial?"

The exception raising this question is overruled for the reasons which we have assigned in discussing the questions above stated.

The judgment of the Circuit Court is affirmed.

Mr. Justice Stabler concurs.

Mr. Chief Justice Blease (concurring in result) : The explanations of the plaintiff, disclosed in his testimony, as to his transactions with the defendant, appear, according to the record, very unsatisfactory and confusing. But the jury saw him on the witness stand, heard his testimony, and, under our law, they were the proper judges of the explanations he gave and his credibility. In that situation, I have no right to substitute my personal opinion for the conclusions reached by the jury. There was some evidence from the plaintiff, though weak and conflicting, which gave the plaintiff the right to have all issues in the case submitted to the jury.

Mr. Justice Bonham (concurring in part and dissenting in part) : I concur in so much of the opinion of Mr. Justice Carter as affirms the judgment of the Court below which awards to the plaintiff actual damages. I do not concur in the part of his opinion which affirms the judgment for punitive damages. The foundation of the claim for such damages is stated in the complaint to be that defendant had manufactured and fabricated the false charge that the plaintiff had appropriated its money to his own use, and that this charge was made willfully and wantonly with intent to defraud plaintiff of his money which he had put up as bond when he was appointed agent for defendant at Florence. The respondent relies for proof that the charge was made willfully and wantonly with the corrupt intent ascribed by the complaint, upon the letter of May 19, 1930, written by the comptroller to the manager of the restaurant, and the letter of the manager of date May 20, 1930, to the plaintiff. The significant part of these letters is that they relate to movements of certain Marines who it is claimed were fed at Florence by the plaintiff, and certain provisions furnished a picnic party from Hartsville. In reference to these, the comptroller wrote the manager this: "I see no evidence in the weekly reports that the sales covering these movements

were reported, and it appears to me that definite information should be had as to the failure of the former agent to report these sales. What happened to this money? We can find no reflection of these receipts in the sales reported."

Now, when confronted with these facts at the trial of the case, plaintiff attempts to explain them by saying that he did not report the sales as of the days they were made, but scattered them over a period of time to make his average sales seem larger. There is nothing in the reports of that period to point to this method of reporting. His testimony in regard to these transactions is far from satisfactory.

The letter of Mr. Hooper, the manager, was not answered by the plaintiff although the manager said in it: "I am attaching the letter received this morning from our Comptroller. You will note in the last paragraph he states *he would like to hear from you to expedite the audit of your accounts, so that he will be able to make settlement as soon as possible.*" (Italics added.) Here is proof direct and positive that the defendant had "probable cause" to believe that there was a discrepancy in the accounts of plaintiff, and that the delay in settling with him was not for the purpose of making a false charge against him, but for the purpose of unraveling the confusion apparent in the accounts, which, by plaintiff's own testimony, was brought about by his tortuous method of keeping his accounts.

Certainly there is no proof of willful and wanton action on the part of defendant, taken with intent to injure plaintiff, or to deprive him of his money. Surely defendant was entitled to reasonable time in which to audit the accounts. But plaintiff contends that the accounts had been audited by the agent who checked him out and succeeded him as agent at Florence. That position is untenable. It would have been a practical impossibility for that agent to have audited accounts extending over a period of months, in the time given by him to the "taking over." All he did was to check over the physical properties turned over to him. His receipt shows

it. See folios 205-208, both inclusive, of the record. "Examination begun 9 A. M., finished 2 P. M." So states the receipt upon which plaintiff relies. I repeat it is impossible that any audit of accounts was made within that period of time. This receipt is signed May 4, 1930, suit was begun June 14, 1930, while defendant was seeking from plaintiff the information necessary to untwist the tangled skein of plaintiff's accounts.

I can find in the record no evidence which warrants the verdict of $350.00 punitive damages. I think there should be a new trial unless plaintiff will remit on the judgment the sum of $350.00 so found as punitive damages.

## On Petition for Rehearing

Mr. Chief Justice Blease, and Messrs. Justices Stabler and Carter.

Upon due consideration of the within petition, being satisfied that the Court reached a correct conclusion in the opinion herebefore filed in the case, and that no material matter was overlooked, the rehearing asked for is refused, and the petition is dismissed.

Messrs. Justices Cothran and Bonham: We think there should be a rehearing.

Mr. Justice Cothran (dissenting): The dissenting opinion heretofore filed by me in this case is withdrawn; the following is submitted in substitution of it and will be considered both as a dissent from the opinion of Mr. Justice Carter upon the merits of the appeal and as a dissent from the proposed order dismissing the petition for a rehearing:

The plaintiff, prior to May 4, 1929, was employed by the defendant as manager of its restaurant at Florence. On that day his employment was terminated by the defendant which wished to transfer him to Richmond. To the transfer he objected. At the time of his employment, the plaintiff was required to and did deposit with the defendant $500.00 in cash, in the nature of a bond, as security for the faithful

performance of his duties as manager. The complaint alleges that the agreement between the plaintiff and the defendant in reference to the deposit, was that, in the event of the termination of the employment, the plaintiff should account "for all of the money and property of the defendant which had come into his possession" and that, upon doing so, the deposit should be returned to him.

It will be observed in passing that, according to the plaintiff's own allegations, contained in his complaint, the deposit was intended to secure, not only the faithful performance of his duties as manager but a true and faithful accounting by the plaintiff of his stewardship, and that only then was he entitled to a return of the cash deposit.

He alleges that immediately upon the termination of his employment, he accounted for all of such money and property to the satisfaction of the defendant, and "that no deficit or liability existed from the plaintiff to the defendant at the time of plaintiff's leaving"; he made demand upon the defendant for the return of his deposit, but that the defendant "fraudulently and willfully, with the intent to deprive plaintiff of his money, and in utter disregard of his rights refused to deliver same to the plaintiff." In support of his allegation of fraudulent and willful withholding of the money, the plaintiff alleged: "That the defendant after plaintiff had accounted for all money and property placed in his possession in order to retain possession of the said sum of Five Hundred and No/100 ($500.00) Dollars, in violation of plaintiff's rights, fraudulently and maliciously fabricated a charge and accusation against the plaintiff, that the plaintiff had while in the employ of the defendant as manager of its restaurant at Florence, S. C., fed on one occasion, approximately one hundred Marines, and that he had failed to account for the receipts of feeding these one hundred men and had feloniously appropriated and stolen the money received from these men, all of which the defendant knew was false and which charge the defendant manufactured and

fabricated for the purpose and with the intent of defrauding and depriving plaintiff of his money." That by reason thereof the plaintiff had been damaged in the sum of $2,500.00, for which he demanded judgment.

The defendant in its answer, after admitting its corporate capacity, set up a general denial to the complaint.

The case was tried before his Honor, Judge Wilson, and a jury, in November, 1930. I will pass by the motions of the defendant to strike out certain allegations of the complaint, and for leave to answer anew, for the reason that I am satisfied with the disposition of the exceptions made in the opinion of Mr. Justice Carter, in reference to these matters. The jury returned a verdict in favor of the plaintiff for $500.00 actual and $350.00 punitive damages, and, from the judgment entered thereon, the defendant has appealed.

The question that I shall discuss is whether the defendant's motion for a directed verdict as to actual and punitive damages, either or both, should have been granted.

The plaintiff has selected the battle ground of his controversy, namely, that he is entitled to a return of the deposit for the reason that he has fully accounted for all money and property that came into his possession as manager, and "that no deficit or liability existed from the plaintiff to the defendant at the time of the plaintiff's leaving."

I think that the plaintiff has utterly failed, according to his own admissions, in carrying this burden upon which he has based his right to recover any part of the deposit at this time and in this proceeding.

The plaintiff's only evidence of an accounting was the production of Exhibit A. It was a mere checking of the cash and stock on hand when the management was being turned over to his successor; simply a checking of the physical properties. It shows the amount of cash on hand, $11.95, and stock, $91.84, which was turned over by the plaintiff to his successor. It does not purport to state an account between the plaintiff and the defendant. There was nothing

therefore to go to the jury upon the basis of the plaintiff's alleged right to recover the deposit. The defendant was entitled to something more than an inventory of the physical properties and money on hand at the time of the transfer. It was entitled to a full audit of his accounts and a settlement in accordance therewith before the security was surrendered. He has not undertaken in any degree to perform this duty, though importuned by the defendant to do so. His energies have been explained in attempting to explain discrepancies which he could not deny. It is proposed to punish the defendant because, while demanding explanations which it had the right to demand, it retained the deposit which it had the right to retain.

When we come to consider plaintiff's second basis for his alleged right to recover, to wit, that no deficit or liability existed from him to the defendant at the time he left its employ, we find the record exhibiting the same absolute lack of evidence to support his claim. On the contrary, the record shows affirmatively that he did not account for all the moneys that came into his hands while in the employ of the defendant and that there was deficit by reason thereof. The weekly sales reports were record evidence made by him, and by him alone, and they showed, or purported to show, and they would have the company and the world believe that they showed, the true status of the operations of the business put in his charge.

That the plaintiff collected from the lieutenant of the Marines, for meals furnished the men, on April 9, 1930, is irrefutable, as the defendant produced his written receipt therefor, the signature to which and the fact that the meals were furnished by the plaintiff were acknowledged by him as a witness on the stand. This item does not appear upon the plaintiff's daily report made weekly. On the report for the week beginning April 6th and ending April 12th, submitted by the plaintiff, the item for April 9th, the day the meals were furnished, appears in the column headed "Cash Sales," as $45.10. The plaintiff attempts, as an explanation, that he

and the company preferred that the unusual item of $75.75 would not be in line with the normal receipts, and that for that reason he prorated it among the other days, whether of that week or not he does not state. This unquestionably was a breach of duty on his part; his duty was to state honestly the receipts of each day. His arrangements, if true, rendered it impossible of verification, and, but for the fact that an investigation was made, which developed the fact that he had collected the money, it would never have appeared; even now it is impossible to say that all of it was prorated. It presented the opportunity, against which the company had no protection, for him to report the normal receipts, using so much of the $75.00 as may have been necessary to allay suspicion of wrongdoing. It is significant that not a word of this arrangement fell from his lips or pen until he took the stand as a witness in his own behalf, although he was importuned by letter and telegram to make an explanation to those who were conducting the audit of his accounts. He acknowledged that he collected the money; his report fails to show he accounted for it; he admits that he held out a part of it each day; he expects this Court to reach the "lame and impotent conclusion" that he performed his duty in this particular. Regardless of whether he subsequently, on other days, accounted for the $75.00, does not sustain his contention, the basis of his claim, that he had made a fair and faithful account of his stewardship.

Another serious irregularity appears in connection with the lunches furnished for the picnic at Hartsville. The plaintiff admits that he supplied the lunches and billed the party who ordered them with $734.50 on July 4, 1929, and that he collected for them the following checks:

| | |
|---|---|
| July 2 | $200.00 |
| July 6 | 400.00 |
| July 8 | 134.50 |
| | ——— |
| Total | $734.50 |

His reports for that date do not show the receipt by him of any one of the three checks. He attempts to explain this by saying that he purchased the supplies on temporary credit and paid for them out of the proceeds of the checks which were made payable to and indorsed by him. He presented bills amounting to $718.84, and claims to have credited the company with the difference $15.66. The evidence is that there was a profit of 25 cents at least upon each of the 1,550 lunches, $387.50, for which the company was credited with $15.66.

There is no assurance that the bills amounting to $718.84 represented supplies used solely for the lunches. For instance, they include 783 pounds of "friers" (chickens), half a pound of chicken for each sandwich. The normal method of keeping the account would have been to charge himself with the checks received and credit himself with the cost of the supplies purchased. If all that he says is true, he has failed far from showing a fair and faithful accounting, and that he owes the defendant nothing, the basis of his claim for a return of the deposit.

As to the verdict of $350.00 punitive damages: The basis of such damages is a malicious spirit upon the part of the defendant against the plaintiff. The evidence, far from exhibiting such a spirit, shows the utmost consideration of the plaintiff while exercising an unquestioned right, one that was recognized by the plaintiff himself, for he writes on May 20th that the defendant "have had plenty of time to check my account."

After the transfer of the cash on hand from the plaintiff to the incoming manager, the defendant certainly had the right to audit his account, a matter that was not involved in the statement of May 4th, the transfer statement, and the defendant proceeded with the audit, which of course took some time.

On May 15th, the plaintiff, becoming impatient, telegraphed for the return of his deposit; the defendant on the same day responded by wire: "Your account in process of audit. Settlement will follow without delay."

On May 20th the defendant wrote the plaintiff inclosing a letter from its comptroller calling attention to the meals furnished the Marines, dated May 19th, and politely asking the plaintiff for his co-operation in explanation of the item, promising a settlement "as soon as possible," and adding: "I hope you have not been inconvenienced by the delay in closing your accounting, and trust you will be able to explain matters to the satisfaction of our Comptroller." The letter of the comptroller was a complaint that proper returns for the meals to the Marines had not been made, adding: "While this investigation is being made we feel that the former agent should give us a clean story so as to expedite the audit of his account as much as possible and enable us to make settlement at the earliest possible date."

Although this letter was addressed to the home of the plaintiff, he claimed not to have received it.

On May 28th the plaintiff wired peremptorily: "Forward security at once."

On May 29th the defendant responded by wire: "Your wire received. Audit being held due to your failure to reply to letters of May 20th."

On May 31st the defendant forwarded copies of the letters of May 19th and 20th to the plaintiff, who replied on June 2d denying that he had collected for meals furnished the Marines on February 8th and May 14th and threatening suit if the deposit was not remitted by the following Thursday. It appears that no reference was made in either the letter of the comptroller or in the letter of the plaintiff to the admitted collection of April 9th.

On June 14th the present action was instituted.

If there is the slightest evidence in the case sustaining or tending to sustain the charge of the plaintiff that the defendant acted maliciously in fabricating a charge against him in order that the defendant might steal the deposit, I have been unable to find it. All through the transactions the defendant has acted with the utmost consideration of the plaintiff in the exercise of an unquestionable right to hold

the deposit until the skirts of the plaintiff have been cleared by an audit and a full and fair accounting had been made by him.

This appeal should be decided upon the issue proffered by the plaintiff, that he is entitled to the return of the deposit. because he had fully accounted to the defendant for all of the money and property in his possession as manager and was not indebted to the defendant for any deficit whatever. His own testimony refutes this claim, for it shows unquestionably that he has not made an accounting to the defendant. That the defendant had the right to withhold the deposit until this was done appears beyond controversy, and it has been often decided by this Court, notably in the cases of *Tolbert v. Roark,* 126 S. C., 207, 119 S. E., 571, and *Scott v. Newell,* 146 S. C., 385, 144 S. E., 82, that one in the exercise, *bona fide,* of a legal right, cannot be said to have been guilty of a fraudulent act entitling the other party to punitive damages. The Courts have gone even to the extent of holding that he is immune when he is in the honest exercise of a supposed legal right. 8 R. C. L., 591.

I think therefore that the judgment of the Circuit Court should be reversed upon both items of actual and punitive damages, without prejudice to the right of the plaintiff to a return of the deposit upon his making a full accounting, the basis upon which he has pitched his right to recover.