## 11756

### HASTINGS-STOUT CO. v. BENNETT *ET AL.*

#### (127 S. E., 720)

SALES—FAILURE TO SUBMIT ISSUE WHETHER PLAINTIFF HAD ACTED TO MINIMIZE DAMAGES AFTER NOTICE OF DEFENDANT'S INTENT TO ABANDON CONTRACT HELD ERROR.—In action for breach of contract to purchase oats, direction of verdict for plaintiff and failure to sub-

mit issue whether plaintiff, after being notified that defendant would not carry out contract, failed to minimize loss by making immediate sale to other parties *held* under evidence error.

Before RICE, J., Laurens, October, 1921.   Reversed and remanded for new trial.

Action by the Hastings-Stout Co. against J. S. Bennett and another doing business as J. S. Bennett & Co.   Judgment for plaintiff and defendants appeal.

The following is the complaint and answer referred to in the opinion:

### COMPLAINT

For a second cause of action:

(1) That the plaintiff, Hastings-Stout Company, is now, and was at the times hereinafter stated, a corporation created, organized, and existing under and by virtue of the laws of the State of Illinois.

(2) That the defendants, J. S. Bennett and Thomas W. Bennett, are now, and were at the times hereinafter stated, partners in trade under the style and firm name of J. S. Bennett & Company.

(3) That on or about the 29th day of November, 1920, plaintiff and defendants herein entered into an agreement by which the plaintiff sold, and the defendants bought, 10,000 bushels bleached No. 2 white oats to be packed in new sacks, at 70 cents per bushel, present rate of freight to be allowed to Laurens, S. C., with the buyer to have the option of ordering out the said oats at any time between the date of said contract and June 30, 1921, by paying in addition to the contract price a carrying charge of one-half cent per bushel per month or fraction thereof, after January 1, 1921, until June 30, 1921.

(4) That at all times during the period of said contract the plaintiff was ready and willing to ship and deliver the said oats bought by the defendants as aforesaid.

(5) That the defendants, although frequently called upon by the plaintiff to furnish shipping instructions and to order out said oats and to receive and pay for same, failed and refused to do so, and have not received any of said oats under said contract.

(6) That at the expiration of said contract period plaintiff sold said oats which the defendants had failed and refused to receive and pay for as aforesaid for the account of said defendants, and on such resale received therefor the sum of $5,638, and thereby suffered or sustained a loss on account of same in the sum of $1,662.

(7) That, by reason of the breach of said contract by the defendants herein as aforesaid, plaintiff has been damaged in the sum of $1,662, for which demand has been made and payment refused.

(8) That a statement of the transactions under this contract, whereby the plaintiff herein resold the said oats for the account of the defendants is hereto attached and made a part and parcel of this complaint and marked "Plaintiff's Exhibit B," and reference thereto is craved as often as may be necessary.

Wherefore plaintiff demands judgment against the defendants as follows: On the first cause of action for the sum of $157.90, and interest. On the second cause of action for the sum of $1,662, and interest. For their costs and disbursements, and for such other and further relief as to the Court may seem proper.

### Answer

The defendants, answering the complaint, respectfully show unto the Court:

(1) They deny the allegations of the complaint not admitted.

(2) They admit the allegations of paragraphs 1, 2, 3, and 4 of the complaint, except that the contract was made on or about the 27th November, 1920, instead of 27th De-

cember, and the oats were purchased by defendants for J. M. Gregory, to whom defendants had sold same.

(3) They admit they failed to order out 4,500 bushels of said oats, for the reason that they had no shipping instructions from Mr. Gregory, and defendants notified plaintiff to sell said oats on May 14, 1921, at which time they were worth the contract price or more, including the deposit of $500 made as a guarantee of the contract, and, had plaintiff then sold said oats, it would have had no loss under said contract, and defendants are not chargeable with the one-half cent per bushel carrying charges for June.

(4) They deposited the sum of $500 at plaintiff's request, through plaintiff with First Bank & Trust Company at Cairo, Ill., on or about December 1, 1920, on which defendant was to allow 3 per cent interest per annum, during the life of the contract, and plaintiff applied said deposit to account of their alleged loss on or about July 1, 1921, but has not credited the interest thereon, and defendant is entitled to have same credited.

(5) Defendants have no knowledge sufficient to enable them to form a belief as to the amount for which plaintiff sold said 4,500 bushels of oats or that it sold same, and allege that same were at the time of the alleged sale worth more than enough to pay any loss that plaintiff might have sustained by reason of failure on the part of the defendants to order out said oats, after application of the $500, with interest thereon, deposited with the plaintiff as aforesaid.

(6) They admit the allegation of paragraphs 1 and 2 of the second cause of action, and deny the other allegations thereof.

(7) They admit they had negotiations with the plaintiff in reference to making a contract with it for the purchase from it of 10,000 bushels of oats, in addition to those purchased under the first contract, but said negotiations never resulted in any contract being made, and they are there-

fore due the plaintiff nothing on the account of the matter set forth in this cause of action.

Wherefore defendants demand judgment that the complaint be dismissed, with costs.

The exceptions were as follows:

1. Because his Honor, the presiding Judge, erred, it is respectfully submitted, in directing a verdict for the plaintiff on the second cause of action described in the complaint, when it appeared from the testimony:

(a) That no valid and binding contract had been entered into between the plaintiff and the defendants; the evidence being that the negotiations looking towards the entering into a contract were by letters and telegram, plaintiff's letters stating that all negotiations were subject to plaintiff's confirmation, and there is no evidence that defendant's offer to purchase oats was confirmed by the plaintiff, or that the minds of the parties ever met on a contract.

(b) That the alleged contract was one based on telegrams and letters for sale of oats, a commodity whose prices were subject to fluctuations, quotations being subject to the confirmation by the parties in accordance with written notices given by each to the other, such confirmation in the course of dealings between the parties to show the quantity sold, price, time of delivery and terms of payment. That the negotiations looking to the entering into the contract were:

(1) Defendant's telegram November 29th in Code translated "Book 10,000 bushels No. 2 white oats additional."

(2) Plaintiff's telegram in reply November 29th in Code translated "Decline offer market advanced will book at 70c per bushel same basis."

(3) Defendant's telegram November 29th, "Telegram received book additional oats." It does not appear that defendants ever received a confirmation of this request to book the additional oats; and it appears that the market price continuing to advance they wired on December 2nd requesting

confirmation, to which wire they received reply, "Confirmation mailed today." The testimony shows this confirmation was never received and shows further that plaintiff's understanding of the confirmation claimed to ·have been mailed was that it required a deposit by the defendants of five hundred ($500.00) dollars, which was not incorporated in the confirmation claimed to be mailed; and the testimony further shows that the confirmation claimed to be mailed was subject to acceptance by the defendants. It did not appear from the testimony that the minds of the parties ever met on a contract.

(c) That the contract claimed to be made by the negotiations was too indefinite, vague and uncertain, in that no time for delivery, or terms of payment were contained therein as alleged in the complaint.

The error under this exception being that no enforcible contract is shown to have existed.

II. Because his Honor, the presiding Judge, erred, it is respectfully submitted, in not directing a verdict for the defendants on the second cause of action, it appearing from the testimony:

(a) That no valid and binding contract had been entered into between the plaintiff and the defendants; the evidence being that the negotiations looking towards the entering into a contract were by letters and telegrams, plaintiff's letters stating that all negotiations were subject to plaintiff's confirmation, and there is no evidence that defendant's offer to purchase oats was confirmed by the plaintiff, or that the minds of ·the parties ever met on a contract.

(b) That the alleged contract was one based on telegrams and letters for sale of oats, a commodity whose prices were subject to fluctuations, quotations being subject to the confirmation by the parties in accordance with written notices given by each to the other, such confirmation in the course of dealings between the parties to show the quantity sold, price, time of delivery and terms of payment. That

the negotiations looking. to the entering into the contract were:

(1) Defendant's telegram November 29th in Code translated, "Book 10,000 bushels No. 2 white oats additional."

(2) Plaintiff's telegram in reply November 29th in Code translated, "Decline offer market advanced will book at 70c per bushel same basis."

(3) Defendant's telegram November 29th, "Telegram received book additional oats." It does not appear that the defendants ever received a confirmation of their request to book the additional oats; and it appears that the market price continuing to advance they wired on December 2d requesting confirmation, to which wire they received reply, "Confirmation mailed today." The testimony shows this confirmation was never received and shows further that plaintiff's understanding of the confirmation claimed to have been mailed was that it required a deposit by the defendants of five hundred ($500.00) dollars, which was not incorporated in the confirmation claimed to be mailed; and the testimony further shows that the confirmation claimed to be mailed was subject to acceptance by the defendants. It did not appear from the testimony that the minds of the parties ever met on a contract.

(c) That the contract claimed to be made by the negotiations was too indefinite, vague and uncertain, in that no time for delivery, or terms of payment were contained therein.

The error under this exception being that no enforcible contract is shown to have existed.

*Messrs. Simpson, Cooper & Babb,* for the appellants, cite: *Existence of contract ordinarily a question for the jury:* 17 S. C., 480; 93 S. C., 537; 113 S. C., 352. *When undisputed facts do not make a contract it is a question of law:* 17 S. C., 480; 93 S. C., 537; 113 S. C., 352. *Effect of telegrams:* 68 S. C., 440; 77 S. C., 219; 89 S. C., 73; 123 S. C., 903. *Whether confirmation mailed is question of*

*fact:* 77 S. C., 219; 111 S. E., 217.   *Nature of written draft of contract suggested or referred to as evidence:* 86 Me., 248; 41 Am. St. Rep., 545 at 554.   *Nature of valid offer:* 75 S. E., 808.

*Messrs. Dial & Todd* and *F. P. McGowan,* for the respondent, cite: *Only one reasonable inference to be drawn from the testimony:* 78 S. C., 202; 99 S. C., 417; 104 S. C., 16; 26 Sup. Rep. 1.   *Acceptance by mail or telegram is valid though lost:* 9 Cyc., 295.   *Seller's rights on refusal of buyer to accept goods:* Benj. on Sales, Sec. 1014; 81 S. C., 10; 28 S. C., 230.   *Measure of damages for breach of contract:* 78 S. C., 207; 121 S. C., 193; 68 S. C., 363; Cheves 153.   *Why this measure of damages:* 2 Benj. on Sales, Sec. 1117; 10 S. C., 97; 75 S. C., 349.

May 4, 1925.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

The action herein was for damages for breach of two alleged contracts.   The issues raised by the pleadings will be seen by reference to the complaint and answer.   The issues were tried before his Honor, Judge Rice, and a jury, and resulted in a directed verdict in behalf of the plaintiff for $140.90 on the first cause of action, and for $1,362 on the second cause of action.   The defendant appeals from the judgment on the second cause of action.

T. W. Bennett, one of the defendants, testified as follows on redirect examination:

"You were asked if you sent the second $500 deposit. Why didn't you send it?   A. Our letter indicated that our trade was off.   Mr. Gregory decided he didn't want to be held in abeyance, and instructed us to countermand the order.

"Mr. Todd: Objects to reference to Mr. Gregory.

"Court sustains the objection.

"Q. Had you ever received any confirmation on your

offer on the second lot? A. No, sir. That is why I kept wiring them.

"Q. I note in your letter of May 14th, in reply to their letter, of May 10th, you say that you had no way of holding those people to their contract. Did you have any confirmation or any way to hold them to the contract? A. No, sir.

"Mr. Todd: We object. His statement is a conclusion. That is a question of law. I think it is incompetent.

Court: As all the correspondence was by mail or wire and all the evidence is in writing or print, that would be a matter for the Court and not for the witness. I think the objection is well taken. I will have to sustain the objection.

### "MOTION FOR DIRECTION OF VERDICT

"Mr. Todd: We ask the Court to direct a verdict for the plaintiff on both causes of action; as to the first cause of action for $157.90, on the second cause of action for $1,-662; on the first cause of action upon the ground that the contract was in writing and complete in every respect and was breached by the defendant, and was closed out according to law properly, and a loss of $157.90 sustained, and there is no conflict in the testimony on any material element necessary to establish that contract, and that amount is the difference between the contract price and the market price at the time the contract was closed; for the same reason and upon the same ground upon the second contract.

"(After hearing arguments) Mr. Todd: For the purpose of this motion, we are willing to give you the interest.

"(After hearing arguments) Mr. Babb: We think we are entitled to the direction of a verdict on the second cause of action.

"(After hearing arguments) Court: On the first cause of action, I will direct a verdict for the plaintiff for the amount less the interest, $17, I believe, is the interest which you have offered to pay.

"On the second cause of action I will have to submit it to the jury. There are some questions to go to the jury. If they received the letter of December 10th, notifying them that he didn't want the oats, they should have taken whatever steps were necessary to minimize their damages. The question to go to the jury is upon the issue; where a man is going to be damaged by another and he can minimze his damages he must do it.

"(After hearing arguments for and against the motion) Court: I don't hold that he could at his own option breach the contract, but, if he said that he was not going to carry out the contract, the question is wheher or not it was their business to minimize the damages. (After hearing arguments) Mr. Todd: There is doubt in my mind as to whether or not we are entitled to one-half per cent carrying charge, if the letter of December 10th was received by us. I amend my motion on the second cause of action from $1,662 to $1,-362, eliminating that matter of carrying charge.

"(After hearing further arguments) Court: I am afraid I will have to direct a verdict for the plaintiff. I don't see anything else to do under the decisions of the Supreme Court. There is no question that these telegrams—even if this other paper didn't reach him—the telegrams make up the contract."

The defendants appealed upon exceptions which will be reported.

The case of *Cooper & Griffin, Inc., v. W. C. Cooke & Co., Inc.,* 122 S. C., 314; 115 S. E., 312, shows so conclusively that the issues should have been submitted to the jury that we do not deem it necessary to cite other authorities.

Reversed and remanded, for a new trial.

MESSRS. JUSTICES WATTS, FRASER and MARION and MR. ACTING ASSOCIATE JUSTICE JAS. W. JOHNSON concur.

MR. JUSTICE COTHRAN did not participate.