**Israel CASPER, Individually and d/b/a Abby Sales, Appellant,**

v.

**METAL TRADES, INC., Appellee.**

No. 78–1504.

United States Court of Appeals, Fourth Circuit.

Argued May 7, 1979.

Decided Aug. 9, 1979.

Beril M. Abraham, Virginia Beach, Va., for appellant.

T. E. Pedersen, Charleston, S. C., for appellee.

Before WIDENER and HALL, Circuit Judges, and WARRINER *, District Judge.

K. K. HALL, Circuit Judge:

In this diversity action the central issue is whether the district court erred in taking extrinsic evidence to interpret the terms of a contract which the court deemed ambiguous.

The parties agree that South Carolina law controls the litigation. The writing at issue is a purchase order which contains conflicting typed and handwritten terms setting dates for delivery and disclaiming the seller's liability for delivery delays. Plaintiff/appellant seller contends that these terms are unambiguous and the ad-

* Honorable D. Dortch Warriner, United States District Judge for the Eastern District of Virginia, at Richmond.

mission of extrinsic evidence to interpret their meaning violated the parol evidence rule of the South Carolina Uniform Commercial Code. S.C.Code § 36–2–202.

We think the writing as a whole is ambiguous and the extrinsic evidence heard by the district court was properly admitted to explain the meaning of its written terms. Because the district court's findings of fact based upon that evidence are not clearly erroneous, we affirm. Fed.R.Civ.Proc. 56.

## I.

The evidence heard by the district court shows that the controversy arises from a prime contract between the United States Navy and the defendant/appellee, Metal Trades, Inc., for the renovation of a ship designed to provide living quarters and recreational space for off-duty submarine crewmen stationed in Spain. The contract was awarded in early July, 1975, and its completion date was September 30, 1975, the day the ship was scheduled to sail—less than three months.

Defendant has been in the ship repair business since 1962, and before 1975, had previously conducted business with Abby Sales, a marine equipment·supply company owned by plaintiff Israel Casper. On July 17, 1975, Abby Sales made a bid to supply equipment needed by defendant for its prime contract.

On July 22, defendant contacted plaintiff by telephone to arrange a meeting between its president, J. E. Corbin, and plaintiff's representative, Dean Casper, to discuss the order.

This meeting was held two days later in defendant's offices. Casper presented to defendant a retyped purchase order similar to the bid previously submitted. On both copies of the order Corbin lined out several items as unnecessary and made numerous handwritten date notations beside almost every remaining item. He did not strike out any delivery terms appearing on the order. The agreement was concluded when a cover page was prepared on defendant's letterhead acknowledging acceptance of the order. The amount of the order was about $244,000.

Plaintiff subsequently made late deliveries of equipment, causing defendant significant cost overruns. Accordingly, defendant refused to make final payment on the purchase order. Plaintiff sued for the payment due and defendant counterclaimed for damages, presenting what the district court termed a "quagmire of disputes."

## II.

Plaintiff argues that the writing shows that he was to be absolved of liability for any delivery delays, and its terms should be given effect.

The writing is an eleven-page, typed purchase order listing items of furniture and kitchen equipment. The order is drawn on plaintiff seller's printed form and is dated July 22, 1975. Attached as a cover page is a one line acceptance letter typed on the purchaser's letterhead; it is dated July 24, 1975. Few written terms appear on the writing. Two read as follows:

Deliveries are based on receiving an award by 23 July, 1975. Beyond this date we can not be held responsible for delivery date being delayed.

Delivery: All items as required—except dishwasher, food cutter, vegetable peeler and extension tables which will be 45 days shipping.

Handwritten notations appear beside almost every item of equipment listed on the eleven pages. These appear in various forms: "30", "3wk" "30 days" "2w," "Sep 1," "40," "Sept. 1". These notations are marked on both parties' copies of the order. None are initialled and, for some items, the notations on the plaintiff's copy are different from those on the defendant's copy.

Plaintiff contends that the contract was accepted on July 24, one day after the disclaimer was effective and, by its express terms, no liability can be imposed upon him for delivery delays. Therefore, judgment for defendant on its counterclaim should be reversed.

## III.

We think the district court properly heard extrinsic evidence to explain the

meaning of the handwritten date notations. Under South Carolina law such evidence may be considered by the court when the parties' agreement is "doubtful from the language of the contract alone." *Cooper & Griffin, Inc. v. W. C. Cooke & Co., Inc.*, 122 S.C. 314, 115 S.E. 312, 315 (1927). *See,* S.C.Code 36–2–202, S.C. Reporter's Comments. *Cf. Farr v. Duke Power Co.*, 265 S.Ct. 356, 218 S.E.2d 431, 433–34 (1975).

In *Breedin v. Smith*, 126 S.C. 346, 120 S.E. 64, 69 (1923), the court held that when two legal interpretations can be inferred from a contract, it is the court's duty to take evidence of preliminary negotiations and circumstances attendant when the contract was executed, for the limited purpose of understanding its meaning, but not for the purpose of contradicting its terms. *See, Julius Kayser & Co. v. Textron, Inc.*, 228 F.2d 783, 784–85 (4th Cir. 1956). As the court quoted in *Cooper & Griffin, Inc. v. W. C. Cooke & Co., Inc.*, 115 S.E. at 316,

> Courts in the construction of contracts, look to the language employed, the subject-matter, and the surrounding circumstances. They are never shut out from the same light which the parties enjoyed when the contract was executed, and, in that view, they are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them, and so to judge of the meaning of the words and of the correct application of the language to the things described. *Nash v. Towne*, 5 Wall. 689, 18 L.Ed. 527.

This is precisely what the district court did here. Sitting without a jury, it heard broad-ranging evidence of preliminary negotiations, the parties' business experience, and their specific knowledge about the requirements of the prime contract and the performance necessary by both parties in order for defendant to complete the prime contract on time. Also, it heard the parties' testimony concerning their intent at the time the writing was executed, but this testimony was expressly discounted.

The district court construed the purchase order as, showing three consistent delivery terms each appearing on the writing. It found the parties agreed to two separate ranges of delivery times. One was "as required" by defendant's hurried work schedule and the other was an outside delivery date term set by the time periods noted by hand. The third term was the disclaimer.

In essence, it found that plaintiff promised to make deliveries as requested by defendant in accordance with its work schedule so it could complete the prime contract at minimum cost and on time. As experienced business parties, they both knew the prime repair contract was short term and would require deliveries to be made in a sequence dictated by the progress of defendant's work. However, they also recognized plaintiff's difficulty in making deliveries as required by the tight work schedule. Therefore, they agreed at the meeting to have plaintiff make deliveries as defendant requested them but with no liability for delays. And, they also agreed that, in all events, deliveries would be made in a commercially reasonable time—as evidenced by the written notation of delivery dates. Thus, the plaintiff's obligation to make deliveries "as required"—but without liability—was agreed to along with the outside delivery date term to which the typed disclaimer was not intended to apply.

The district court found that deliveries were delayed unreasonably and it entered an offset judgment for defendant.[1] We think from all the evidence that the district court's interpretation of the writing is not clearly erroneous. Fed.R.Civ.Proc. 56.

### IV.

Plaintiff argues that the parol evidence rule, S.C.Code § 36–2–202, excludes the ex-

---

1. In view of its construction of the disclaimer term, the district court did not rule on the materiality of the June 23 conditional award date. Nor did the court rule on defendant's contention that the disclaimer was never in-tended to be effective because technically the plaintiff did "receiv[e] the award by 23 July 1975" when the parties arranged their meeting to formalize the purchase order.

trinsic evidence considered by the district court in this case. We think his reliance upon the rule is misplaced. It applies where the parties have intended the writing to be the final, integrated expression of their agreement, and one party seeks to introduce evidence of negotiations, promises, and agreements which do not appear on the writing for the purpose of contradicting clear, written terms.[2] *See Burroughs v. Weston*, 577 F.2d 137, 140 (4th Cir. 1978).

Here, the district court heard extrinsic evidence for the purpose of explaining terms evidenced on the writing. It discounted the parties' remembered intent about those terms and construed the writing "from the same light which the parties enjoyed when the contract was executed." *Cooper & Griffin, Inc. v. W. C. Cooke & Co., Inc.*, 115 S.E. at 316. We think the parol evidence rule does not bar such a view of written terms.

### IV.

Finding no error in the district court's rulings and findings regarding payment terms and defendant's proof of damages, we affirm the judgment of the district court.

*AFFIRMED.*

WIDENER, Circuit Judge, dissenting:

I respectfully dissent because the district court failed to give any effect to an operative provision in the agreement which limited the seller's liability for late deliveries. As a result, the case was tried on the wrong theory and should be remanded for further consideration.

The contract in this case was not in the form of a document prepared and signed by the parties. It consisted of a bid by plaintiff (seller) which defendant (buyer) accepted on July 24th by attaching its purchase order to plaintiff's bid. The bid did not contain a delivery schedule, but did contain the following provisions:

Deliveries:

All items as required except dishwasher, food cutter, vegetable peeler and extension tables which will be 45 days shipping.

Deliveries are based on receiving award by 23 July, 1975. Beyond this date, we cannot be held responsible for delivery dates being delayed.

Deliveries are based on best information at this time and predicated on prior order received in house.

The purchase order in its original form had no delivery dates, but during a meeting between the parties on July 24th, the buyer penciled in what it claims to be delivery dates furnished by seller. The parties disagree on the legal effect of these dates on the purchase order. The buyer felt that they were firm delivery dates, while the seller views them as merely goals. The district court allowed the parties to present extrinsic evidence to support their respective interpretations of the dates. The court found neither view entirely convincing and ultimately held that delivery was required within a reasonable time.[1]

---

2. We note that the Rule allows proof of additional consistent terms *not* evidenced on the writing *unless* the court finds that the parties specifically intended to have the writing be the complete and exclusive statement of their contract terms. S.C.Code § 36–2–202(b).

1. The majority holding is based in large part on its statement that "[t]he district court construed the purchase order as showing three consistent delivery terms each appearing on the writing." It found the parties agreed to *two* separate ranges of delivery times: one "as required" by defendant's hurried work schedule, and the other an outside delivery date term set by the time periods noted by hand. The

third delivery term found by the majority was the disclaimer. I respectfully suggest the district court did not find such facts. While the first and third items marked are in the written agreement, in its opinion the district court expressly did not decide whether the penciled-in dates were agreed to by the parties, for it stated: ". . . likewise, whether the time notations on the various copies of the purchase order were guarantees or aspirations is immaterial." It found, I contend, there were two possible delivery times in the contract, and chose neither of them, rather a "reasonable time," which it measured by the penciled notes.

I also note that even if the penciled-in dates were agreed to before the signing of the con-

In so holding, the district court went beyond the operative provisions of the contract quoted above, in which the seller promised to deliver "as required," but disclaimed all responsibility for late deliveries if the award were made after July 23rd. The award admittedly was made after that date. If the written contract is to be given any effect, and no reason was given by the district court why it should not be (certain parts were enforced by the district court), then it controls the seller's responsibility with respect to deliveries and an effort to vary or expunge written contract terms by extrinsic evidence violates the parol evidence rule.[2] South Carolina Code § 36–2–202. Thus, I think the district court erred by varying the terms of the written agreement by reason of extrinsic evidence. The court should have based its decision on an interpretation of the "as required" language and the disclaimer, both integral parts of the section of the contract on "deliveries."

I would remand the case for application of the proper legal theory. While it is conceivable that the district court might reach the same result as before, based on the evidence now in the record I suggest that such is doubtful. The seller expressly disclaimed any liability for late deliveries if awarded the contract after July 23rd, and it is uncontradicted in the record that this date was not arbitrarily selected but was based on seller's experience with summertime slowdowns by its manufacturers. Indeed, this is precisely what occurred, for the district court found that the seller "failed to deliver because he could not secure such equipment from the manufacturers as he had expected."

The buyer admittedly was concerned about delays due to the tight deadline in its contract with the Navy, but if it wanted to protect itself it could have either awarded the contract before July 24th, or asked for a written provision in the contract requiring deliveries to be made by dates certain. The failure of the buyer to so protect itself, especially in light of the express disclaimer by the seller, makes it clear that the district court's opinion requiring delivery within a reasonable time, which imposes on the seller the stringency of the buyer's deadline when the buyer chose not to either so burden the seller in a contract or award it in time, was in error. Furthermore, even if the contract might be read, without reference to extrinsic evidence, to impose some other duty unaffected either by the clear language in the disclaimer or by the failure of the buyer to pass its deadline on to the seller, e. g., best efforts or general good faith, a point on which I express no opinion, it appears from the record now before us that the seller met this duty. However, I would yet remand the case in order to give the district court the first opportunity to interpret the contract in the light of the evidence now at hand or such as might be produced on remand.

---

tract, that fact would not effect the result in this case, since, in all events, the disclaimer would apply equally to the penciled-in dates if they were part of the contract as it was signed.

The only way the penciled-in dates could have any effect would be if they were a change in the contract made after its execution, a fact the district court did not find.

**2.** The parol evidence rule is a rule of substantive contract law and not merely a rule of evidence. Therefore, South Carolina law governs. *Rock-Ola Mfg. Corp. v. Wertz*, 282 F.2d 208, 210 (4th Cir. 1960); see *United States v. Bethlehem Steel Co.*, 215 F.Supp. 62 (D.Md. 1962), affirmed on the opinion of the district court, 323 F.2d 655 (4th Cir. 1963); 1A Moore's Federal Practice ¶ 0.313.