1006

Richard C. RINGER and Anne S. Ringer, Appellants v. David GRAHAM:
Newberry Federal Savings and Loan Association; Delph Context Company; Century Builders, Inc.; White Electric Company; Stier Supply
Company; Fulmer Building Supply; Bilt Rite Corp.; The Lite House,
Inc.; Chapin Concrete Corp.; Columbia Lumber Company; Whitaker
Floor Coverings; Sara Stone Shealy, Executrix of the Estate of G.
Russell Shealy; and John Willingham, d/b/a/ Willingham's Septic
Tanks, of whom David Graham; The Lite House, Inc.; Columbia
Lumber Company; Sara Stone Shealy, Executrix of the Estate of G.
Russell Shealy; and John Willingham, d/b/a Willingham's Septic
Tanks are Respondents.

(359 S. E. (2d) 523)

Court of Appeals

*Spencer Andrew Syrett,* Columbia and *John S. Huggins,* Irmo, *for appellants.*

*David B. Butler,* Columbia and *Richard M. Kenan, Eugene C. Griffith* and *James Spencer Verner,* Newberry, *for respondent.*

Heard April 15, 1987.

Decided Aug. 3, 1987.

*Per Curiam:*

This action arises out of a written contract dated April 1, 1982, between the appellants Richard and Anne Ringer (Mr. and Mrs. Ringer) and respondent David Graham in which Graham agreed to construct a house on the Ringers' land according to agreed-upon plans and specifications. The Ringers obtained a construction loan from Newberry Federal Savings and Loan Association.

As the dwelling neared completion, the Ringers discovered the cost to them would exceed the cost which they believed the contract called for. Upon Graham's refusal to endorse

the final construction draw check, the Ringers commenced this action. In their petition the Ringers sought (1) an order requiring Graham to permit disbursement of the funds from the final construction draw check, (2) an order permitting the Ringers to pay into court a sum equal to the alleged contract sum less those amounts already paid to or on behalf of Graham, (3) an order declaring the property free of mechanics' liens, (4) judgment against Graham for any amount in excess of the alleged contract price which the Ringers might be ordered to pay, and (5) an order requiring Graham to account for the sums expended on the construction.

Graham answered and claimed a mechanic's lien of $4,350. The record also includes answers from various suppliers, each of whom also alleged directly or indirectly entitlement to a mechanic's lien. Before the commencement of trial, the Ringers moved to dismiss all mechanics' liens for failure to file a *lis pendens*.

The case was initially heard November 3, 1982. The disputed issues before the trial court were the amount of the contract, the right of Graham and various suppliers to mechanics' liens, and the amounts of the liens. The trial judge granted the defendants' motions for directed verdicts, finding that the amount of the contract was, as Graham argued, $97,000, and that all respondents were entitled to recover on their claims. This court reversed and remanded, holding the Ringers presented evidence from which the fact finder could reasonably infer the contract amount was, as they contended, $85,000. We also held judgments on the counterclaims were inappropriate since none of the suppliers proved the amounts of their claims. *Ringer v. Graham*, 286 S. C. 14, 331 S. E. (2d) 373 (Ct. App. 1985).

On remand, the trial judge, after hearing all the evidence, determined the contract sum to be $97,000 and awarded Graham and other suppliers judgment for damages on their counterclaims. In addition, the trial judge declined to order other relief requested by the Ringers in connection with this action. We affirm as modified.

## I. CONTRACT PRICE AND GRAHAM'S COMPENSATION

The contract at issue was drafted on an American In-

stitute of Architects (AIA) form. Mr. Ringer obtained the form from his place of business and filled in the pertinent information after discussing the project with Graham.

Article 4, the clause in contention, provides as follows:

## CONTRACT SUM

The Owner shall pay the Contractor in current funds for the performance of the Work, subject to additions and deductions by Change Order as provided in the Contract Documents, the Contract Sum of EIGHTY-FIVE THOUSAND AND NO/100 DOLLARS. [The amount is handprinted.]

The Contract Sum is determined as follows: (State here the base bid or other lump sum amount, accepted alternates, and unit prices, as applicable.)

[The remainder of the excerpt is handprinted.] IT IS MUTUALLY UNDERSTOOD AND AGREED THAT THE STATED ABOVE AMOUNT IS A NOT TO EXCEED AMOUNT. IT IS *FURTHER* UNDERSTOOD THAT CONTRACTOR WILL BE PAID A WEEKLY *SALARY* OF $450 PER WEEK FOR TWENTY WEEKS DURING CONSTRUCTION PERIOD, AND AT FINAL COMPLETION AND ACCEPTANCE BY THE OWNER CONTRACTOR WILL BE PAID $3,000. ALL OTHER COST WILL BE ACTUAL COST. [Emphasis ours.]

Article 5 of the AIA form allows the parties to delineate the allocation of progress payments between "labor, materials and equipment incorporated in the work" and "materials and equipment suitably stored at the site or at some other location agreed upon in writing and to specify a percentage of the contract sum that is to be paid off upon substantial completion of the entire work." None of the terms of Article 5 were completed in this case.

It has been the Ringers' position throughout this action that the quoted contract sum of $85,000 included Graham's weekly salary of $450 for twenty weeks and final bonus of $3,000. Graham, on the other hand, maintains his salary and bonus, totalling $12,000, was in addition to the contract sum of $85,000.

The trial court determined the contract was ambiguous as to whether the contract sum included stated amounts to be paid to Graham and then considered extrinsic evidence and the fact that Ringer prepared the instrument to resolve the ambiguity in Graham's favor.

Although the contract referred to Graham as "Contractor," the use of the word "salary" in the above-quoted provision covering his compensation suggests that Graham could have been working as an employee of the Ringers rather than as an independent contractor. *Cf., Davis v. Satterfield Const. Co., Inc.,* 263 S. C. 356, 210 S. E. (2d) 596, 599 (1974). ("The nature of a contract ... is to be determined not by the name which the parties have given it, but by the nature of the obligation which it imposes, because the law regards substance and not form.") As an employee, Graham could reasonably expect compensation directly payable to him to be separate and apart from any sum specifically allocated to construction costs. Moreover, had Ringer desired to include Graham's salary in the $85,000 contract sum, he could have easily drafted the contract to reflect this intention. Thus, considering the contract as a whole, we agree with the trial court's implicit finding that the contract was ambiguous in that it could "fairly and reasonably be understood in more ways than one." *Farr v. Duke Power Co.,* 265 S. C. 356, 218 S. E. (2d) 431, 433 (1975).

Having found, as did the trial court, that the contract was ambiguous, we also hold that the trial court correctly resolved the ambiguity in Graham's favor. *See Williams v. Teran.* 266 S. C. 55, 221 S. E. (2d) 526, 529 (1976). ("[W]here the contract is susceptible of more than one interpretation, a doubt shall be resolved against the party whose business it was to speak without ambiguity.")

Moreover, we hold the trial court did not err in considering a construction loan inspection record that the Ringers prepared for the Newberry Federal Savings and Loan Association when they applied for a loan for the house. The record was an itemized list including approximate costs of thirty-four separate items totalling exactly $85,000; however, it failed to specify a contractor's salary. Although the document was not part of the contract, its admission was proper insofar as it was necessary to clarify

an ambiguous provision. *See Williams v. Teran, supra,* 221 S. E. (2d) at 528. ("When the agreement is ambiguous the court may take into consideration the circumstances surrounding its execution in determining the intent.")

■ And we find no merit to the Ringers' argument that Graham's answer failed to put the contract amount in issue. The Ringers, as the plaintiffs in this action, had the burden of proof as to all terms essential to the creation of a contract, including price. *Stanley Smith & Sons v. Limestone College,* 283 S. C. 430, 322 S. E. (2d) 474 (Ct. App. 1984). Graham's failure to allege specifically an alternative interpretation does not vitiate that burden. Furthermore, Graham did raise the issue in his answer in that he challenged the Ringers' allegation that he should receive only that portion of the remaining funds representing the difference between $85,000 and what he had been paid thus far.

Mr. Ringer and Graham gave conflicting interpretations of the term at issue. The trial court favored Graham's interpretation over Ringer's. While this court has jurisdiction to determine the facts of this case in accordance with its own view of the preponderance of the evidence, we do not disregard the findings of the trial court. *Duckett v. Payne,* 279 S. C. 94, 302 S. E. (2d) 342 (1983). Under this premise, we hold the trial court did not err in favoring Graham's version which is also amply supported by the record.

Based on our view of the record, we also find no error in the trial court's refusal to allow the Ringers a setoff for alleged defects in Graham's performance. The Ringers' own expert witness testified the overall workmanship was good and that many of the problems might be associated with ordinary settling and may have occurred after construction.

■ We disagree, however, with the trial court's decision to award Graham $4,350, on his counterclaim representing three weeks salary at $450 per week and his $3,000 bonus. Graham admitted he worked only seventeen of the twenty weeks specified in the contract, explaining he stopped work because of his dispute with the Ringers. To award Graham salary for time he did not work is inconsonant with the interpretation that he was a salaried employee. Moreover, the contract expressly stated the $3,000 bonus to be paid to the contractor "upon final completion and acceptance by the owner."

We therefore modify the trial court's order to hold the contract price to be a sum not exceeding $85,000, plus a weekly salary of $450 to be paid to Graham for each week worked up to twenty weeks and a $3,000 bonus to be paid only upon final completion and acceptance by the Ringers. As a corollary to this holding, we further hold it was premature for the trial court to award Graham $4,350, and further modify the trial court's order in this respect.

## II. ACCOUNTING

In their petition, the Ringers requested the trial court to order Graham "to account for the sums advanced" to him. The trial court order did not address this request. Although the Ringers moved for reconsideration of other parts of the order, they failed to raise this issue. As the case was retried after the South Carolina Rules of Civil Procedure took effect, it was incumbent on the Ringers to present the issue to the trial court under Rule 59(e), S. C. R. C. P. (1985). We therefore hold the issue of accounting was not properly preserved. *Talley v. S. C. Higher Educ. Tuition Grants*, 289 S. C. 483, 347 S. E. (2d) 99 (1986).

## III. MECHANICS' LIENS

The trial court dissolved all mechanics' liens except Graham's under Sections 29-5-90 and/or 29-5-120, Code of Laws of South Carolina (1976). Nevertheless, the trial court allowed several subcontractors to recover damages against the Ringers under Section 29-5-420 (allowing a creditor in a contract to maintain an action other than foreclosure of a lien), after finding sufficient allegations and proof of contractual arrangements with the Ringers. On appeal, the Ringers challenge four of these awards.

Because the counterclaims were treated as actions in contract for which damages were sought, they are actions at law; therefore, this court is bound by the findings of fact by the trial court if the record has any evidence to support them. *Townes Associates v. City of Greenville*, 266 S. C. 81, 221 S. E. (2d) 773 (1976).

The Ringers do not dispute the prices or other terms of the various contracts upon which damages were awarded against them: however, they do challenge the findings that they were parties to these contracts.

## A. The Lite House

Contrary to the findings by the trial judge, the Lite House conceded at oral argument that it did not have a contract with the Ringers, maintaining that its recovery would follow from the contract between Ringers and Graham. Furthermore, there is no evidence of record that the Ringers agreed to be contractually liable for payments to the Lite House. We therefore modify the decision of the trial judge to exclude recovery by the Lite House against the Ringers.

## B. Columbia Lumber Company
## (Columbia Lumber)

The Ringers argue Columbia Lumber should not have been awarded damages because in its prayer for relief, it requested only foreclosure of its mechanic's lien; however, as the Ringers concede on appeal, Columbia Lumber alleged facts to establish a contract with the Ringers, thus setting a sufficient foundation for an award of damages. *See* Rule 54(c), S. C. R. C. P. ("Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings.")

We also hold there is evidence to support a finding that a contract existed between Columbia Lumber and Mr. Ringer. The credit manager of Columbia Lumber testified that he had a verbal agreement with Mr. Ringer that Mr. Ringer would pay the bills and that Mr. Ringer did in fact pay the bills on two occasions.

## C. Russell Shealy (Shealy)

Contrary to the Ringers' argument that Shealy failed to plead a contract, Shealy, in Paragraph 6 of his answer, alleges he furnished to the Ringers and Graham, "at their instance and request and upon their agreement to pay therefor" certain appliances at specified prices. Moreover, Shealy's testimony that he dealt directly with the Ringers supports the trial court's finding that he had a contract with the Ringers.

### D. John Willingham (Willingham)

Though Willingham prayed only for foreclosure of his mechanic's lien, he alleged in his answer that he had no contract whatsoever with Graham but dealt exclusively with the Ringers. His testimony supports this allegation.

### IV. DISBURSEMENT OF FUNDS

On appeal, the Ringers argue that they sought a court order directing disposition of the proceeds of the final construction draw check. The trial judge found only that this check, which was in the amount of $16,685.20 and deposited in an insured investment account upon Graham's refusal to endorse the final draw, should be applied to satisfy those claims properly before the court. In a post-trial order following the Ringers' motion for reconsideration, the trial judge acknowledged he did not order a disbursement of the funds; however, he made it clear that this was not an oversight, noting the issue was not raised by the pleadings.

We agree with the trial court that the Ringers did not request the relief they seek on appeal. In their complaint, they requested only a court order that Graham endorse the check and proposed a distribution of the proceeds that was not accepted by the trial court. Furthermore, we are unconvinced that the Ringers will be prejudiced by the trial judge's decision not to direct any specific disbursement of the check. We therefore hold that, in the language of Rule 54(c), *supra*, they are not "entitled" to this relief.

### V. MOTION TO RECONSIDER

Contrary to what the Ringers suggest in their brief, we believe the trial court did reconsider its decision, as evidenced by its post-trial order.

Affirmed as modified.